No. 23,257.

J. D. BRADLEY (revived in the name of his heirs, *Appellants*),
v. BETTY BURGESS et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. POSTNUPTIAL CONTRACT — *Contract Valid — No Violation of Public Policy.* A contract by an old and infirm couple, husband and wife, for the division of their property, in which they agreed to separate because they could no longer continue to live together in comfort by reason of their infirmities and circumstances, and in which it was agreed· that the husband, who was ill, should go to the home of a son by a former marriage, where he would receive proper attention, and the wife be relieved of the burden of attempting to look after him, is held under all the circumstances; a valid contract, and not open to the objection that it violates public policy.

2. SAME—*Party Having Accepted Benefits of Agreement May Not Set It Aside.* Where in such a case, shortly after the separation, the wife dies leaving a will devising her property to her own relatives, *held*, the fact that the husband has accepted the benefits of the agreement, which was fairly entered into and was fully executed, precluded him from setting it aside or from recovering property disposed of under its provisions, and that persons claiming under him occupy no better position.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed June 11, 1921. Affirmed.

*Albert Faulconer,* and *Kirke W. Dale,* both of Arkansas City, for the appellants.

*C. T. Atkinson,* and *Tom Pringle,* both of Arkansas City, for the appellees.

The opinion of the court was delivered by

PORTER, J.: James and Sarah Bradley were husband and wife and resided at Arkansas City. The wife owned two residence lots in Arkansas City, two pieces of city property in Missouri, and some household goods. The husband was the owner of a small parcel of land in Reynolds county, Missouri. They entered into a written agreement for the division of their property, each party thereafter to separately own, use and dispose of his or her property as though the marriage relation had never existed. The reasons for making the agreement were stated in a preamble as follows:

"Witnesseth, that whereas, said parties are husband and wife and are both aged and infirm and in ill health and unable to properly care for each other and it being deemed advisable for said husband to go to the home of a son by a former marriage, there to make his home and have care and attention necessary, and said wife feeling that she being unable to be of assistance in taking care of said husband and be of care and expense to said son, it is hereby agreed by and between said husband and wife that said husband may go to the home of said son for the purposes and reasons above set forth, said wife to remain where she elects.

"Now therefore, it is agreed by and between the parties hereto that it shall be lawful for said parties to live apart as above stated, free from the marital control of each other, the same as if unmarried, and without any interference on the part of each party hereto."

There was a provision by which the wife agreed to accept in full of all demands for her support the sum of five dollars per month for the period of fourteen months, payable quarterly, at the time her husband's pension was due. Shortly after the execution of the contract and the separation of the parties the wife, while visiting in Missouri, died leaving a will which devised all her property to the appellees. Claiming that as the surviving husband he was entitled under the law to an undivided one-half of the real estate, James Bradley brought this action to partition the property in Cowley county. He died while the action was pending and it was revived in the name of his heirs. The devisees under the will of Mrs. Bradley filed an answer setting up the written contract, and alleging that the husband had no interest in the real estate, and that his heirs acquired none. A demurrer to the answer was overruled and the heirs of James Bradley appeal.

The appellants' contention is that the contract is void because it is contrary to public policy. It is argued that inasmuch as an absolute divorce will not be granted upon the consent or agreement of the parties, there is equally as strong a reason for holding that the agreement in question which, it is insisted is equivalent to a limited divorce, should not be recognized, and further, that the contract is void because there is an entire lack of such consideration as will be recognized by the courts. The argument is based upon the proposition that a husband and wife cannot be permitted to live in a state of separation unless there is some failure on the part of one or both in the performance of duties, in the fulfillment of which, it is said, society has an interest. The appellants concede that

Bradley v. Burgess.

postnuptial contracts are valid where they do not contravene public policy but insist that in previous decisions the court has laid down the rule that agreements for the division of property based upon separation between husband and wife can only be upheld when the relations between the parties are such as to make a separation inevitable, because the conduct of one is such as to render separation necessary for the health and happiness of the other. The principal case cited in support of this contention is *King v. Mollohan*, 61 Kan. 683, 60 Pac. 731, which, it is said in appellants' brief, is the very foundation of their claim.

In that case a contract for the division of property was made in contemplation of an immediate separation and with an unexpressed purpose that a divorce should at once be obtained. But even in that situation it was held that because the separation was simultaneous with the execution of the contract the latter was not to be regarded as intended to break the marriage relations at some future time. The appellants, however, stress a statement in the opinion to the effect that:

"An understanding that the separation, which was inevitable, and immediate and legal in itself, should thereafter receive the sanction of the court and effect a dissolution of the marriage relation, cannot be regarded as collusive or fraudulent or violative of public policy." (p. 690.)

But in using this language the court spoke with reference to the facts of the particular case, and was not attempting to lay down a hard and fast rule applicable to all such contracts, nor to limit or define the circumstances or conditions which might be sufficient to render valid a contract of this character between husband and wife.

The appellants' argument is based upon the narrowest construction possible to be given to the word "inevitable" as used in the opinion in the Mollohan case. The word is often employed in the sense of absolute certainty or of something as sure to happen as death. On the other hand, it is often used in a different sense. Soule's Dictionary of English Synonyms gives as synonymous words, "unavoidable, necessary, not to be escaped, that must be suffered."

In the celebrated case of *McCullough v. State of Maryland*, 17 U. S. 316, counsel for the state insisted upon placing upon the word "necessary" a narrow construction as it appears in the provision of the Federal constitution that congress shall

have power "to make all laws which shall be necessary and proper to carry into execution" the powers of the government. The contention was that the word "necessary" should be construed as limiting the right of congress to pass laws for carrying into effect the granted powers, to such as are indispensable, and without which the power of congress would be nugatory. In answering this contention, Chief Justice John Marshall said:

"Is it true, that this is the sense in which the word 'necessary' is always used? Does it always import an absolute physical necessity, so strong, that one thing, to which another may be termed necessary, cannot exist without that other? We think it does not. If reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or useful, or essential to another. To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable. Such is the character of human language, that no word conveys to the mind, in all situations, one single definite idea; and nothing is more common than to use words in a figurative sense. . . . It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense—in that sense which common usage justifies. The word 'necessary' is of this description. It has not a fixed character peculiar to itself. It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports. A thing may be necessary, very necessary, absolutely or indispensably necessary. To no mind would the same idea be conveyed, by these several phrases." (pp. 412, 413.)

So in the Mollohan case the court in speaking of the separation of the husband and wife being inevitable did not use the word "inevitable" as something bound to happen at all events, but as highly probable. Of course, it is always possible, even in extreme cases, that disagreements and quarrels between husband and wife will be adjusted; and the court spoke of the separation as inevitable—not in the sense of being absolutely sure to happen, but in the sense that, from all the circumstances, the parties understood that a separation was bound to occur.

The contract between James Bradley and his wife rests upon sufficient consideration, and we are unable to discover that it contains any provisions contrary to public policy. Here

Klopfenstein v. Traction Co.

were two old infirm persons, husband and wife, each of whom had been married before.  They realized that they could no longer continue to live together in comfort, not because of domestic strife, but because of their infirmities and circumstances.  In order that the husband in his sickness might have proper attention they deemed it best to separate, the husband going to the home of his son where his wants would be cared for, and the wife would be thereby relieved of the burden of attempting to look after him.  The husband possessed some property to which the wife was willing to forego her interest, in consideration of the right to retain for her sole use her own property.  Under all the circumstances we think the contract was one which courts should not hesitate to uphold.

But for another reason the appellants cannot maintain their action for partition.  It was said in *King v. Mollohan,* supra, upon which appellants place so much reliance:

"In our view, the separation agreement does not violate public policy; but if for some reason it did, the fact that the husband had accepted the benefits of an agreement which fairly and equitably divided the property, and which was fully executed, would preclude him from setting it aside or recovering property disposed of under its provisions." (p. 694.)

The appellants, who claim under James Bradley, occupy no better position.  The judgment is affirmed.