No. 29,664.

Bertha Hewett, Howard Moore, Chester A. Moore, Abbie Sloan, Roy E. Moore, Hazel Proctor and Fred Rumble, *Appellees*, v. William D. Gott, *Appellant*.

(294 Pac. 897.)

Opinion filed January 10, 1931.

*W. H. Anderson, G. M. Lamer,* both of Iola, and *Hubert Lardner,* of Fort Scott, for the appellant.

*F. J. Oyler* and *G. R. Gard,* both of Iola, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action, brought by the brothers, sisters and one nephew of the deceased wife of the defendant, is to enjoin and restrain him from conveying, encumbering or in anywise disposing of any of his deceased wife's property, and from taking possession of any of her papers or money in bank until the further order of the court, and to quiet and confirm the title of the plaintiffs to certain real property in Allen county. It involves the question of the abrogation or revocation of a postnuptial contract and the right and authority of husband and wife by contract and deeds to deprive the survivor of them of the constitutional right to the use of a homestead. It also involves some questions of procedure, especially regarding the proof of the contents of the postnuptial contract when none of the original copies was found.

The petition alleged the execution on September 4, 1929, of a postnuptial agreement, attaching a copy of it to the petition as an exhibit. It also alleged the execution and delivery of reciprocal quitclaim deeds in accordance with the terms of the agreement. It further alleged the relationship of the several parties to the action, the death of the wife on November 14, 1929, and that the defendant threatened to dispose of and encumber the property that belonged to the deceased wife.

The answer admitted the relationship of the plaintiffs as stated in the petition, the execution of a postnuptial agreement, and the death of the wife, but neither admitted nor denied the exact contents of the agreement attached as an exhibit, but specifically alleged that such contract was by mutual consent abolished and rescinded by defendant and his wife on or about October 20, 1929, and that they at that time and at the place of their homestead resumed marital relations and continued to live together as husband and wife until the death of his wife, and at the place where they had lived since their marriage, which had been his place of residence and homestead for fifteen years last past.

The trial court found in favor of the plaintiffs on all the issues involved and rendered judgment in their favor, from which judgment and adverse rulings the defendant appeals.

The defendant and his wife, now deceased, had been married about six or seven years when they disagreed to such an extent that they entered into a postnuptial agreement for complete separation and disposition of their property, real and personal. They had each been married before and had accumulated considerable property which was, by the terms of the agreement, to be retained by each of them as if they had never been married, and to make it further effective they each executed to the other quitclaim deeds to all such property, placing ownership as it was before their marriage. The eighty-acre tract on which they were residing when the postnuptial contract and deeds were executed was an exception in that it belonged to the husband and was by the terms of the contract to be conveyed to the wife and was deeded in settlement of a loan of $4,000 made by the wife to the husband at an earlier date, which he invested mostly in cattle. The deed to this eighty-acre tract was executed and delivered at the same time the others were, but it was lost, and on October 18, 1929, defendant executed and delivered another in lieu thereof. The deeds to the wife were recorded, but the contract was not recorded. The evidence shows that one of the original contracts and a carbon copy thereof were given to the attorney for the wife, who testified he mailed the original to her later, but retained the carbon copy.

The following are some of the pertinent provisions of the postnuptial agreement:

"Whereas, the undersigned parties, husband and wife, can no longer live together as such, and it is expedient and desirable that all matters pertaining to their property and marriage rights be settled by amicable agreement. . . .

"Whereas, said parties desire to settle all property and domestic rights between them. . . .

"Said Effie C. Gott is also to receive as her sole and separate estate, free and clear of any right, title or interest of the said William D. Gott, the following described real estate:

"Eighty acres of land, situated and described more particularly as follows:

"The south one-half (S½) of the southeast quarter (SE¼) of section ten (10), township twenty-five (25), range twenty-one (21), Allen county, Kansas.

"Said eighty-acre tract of land having been and was the property of the said William D. Gott prior to his marriage with Effie C. Gott. It being the intention of said parties that all personal property now on said farm, and which is hereinafter described as becoming the property of William D. Gott, is to go

to the said William D. Gott, and the said Effie C. Gott is to receive said described land, and she relinquishes all her right to said personal property.

"It is further stipulated and agreed by and between the undersigned parties that William D. Gott is to have and receive as his sole and separate estate, free and clear of all claims of said Effie C. Gott, all the property which he had and possessed before his marriage, and which he brought to the present marriage relation, except the 80 acres of land above described, which he relinquishes to Effie C. Gott in consideration of her relinquishing all her right to the personal property now on said land, and which in small part had been accumulated during their married life. . . .

"It is further stipulated and agreed that each party signatory hereto absolutely renounces all right, title or interest to all property, real or personal, present, future or contingent of the other . . .

"It is further stipulated and agreed that upon the death of either of the undersigned, the survivor shall not be entitled to receive or claim any portion of or interest in the separate property of the deceased owner at the time of the marriage, acquired since or after the marriage, and that all of said property shall go and belong to the children or legal heirs of said decedent by the prior marriage of persons who would under the law be entitled thereto as if they had never been married to each other. . . .

"It is further stipulated and agreed that in the event a divorce shall hereafter be granted in any court to either of the above parties this contract shall, by the court granting said decree, become a part of said decree and be incorporated in same.

"It is further agreed that this contract shall be binding upon the heirs, executors, administrators and assigns of both of said parties and that it is to be executed in triplicate and not to be altered, modified, changed or varied without the written consent of both parties."

The trial court found all the issues in favor of the plaintiffs and against the defendant, that the written contract dated September 4, 1929, was a legal and binding postnuptial agreement and was in full force and effect at the time of the wife's death on November 14, 1929, and that the contract and the deeds given by the defendant to his wife divested him of all title or interest of any kind in or to any of the property thereby conveyed.

It is first urged by the appellant that the contents of the alleged postnuptial agreement were not established, referring to the evidence of only a carbon copy being introduced to establish the same instead of one of the originals, and referring to the confusion between several drafts of the agreement that were made before the final one, which was executed. On the other hand, it is pertinently suggested that although the exhibit to the verified petition was alleged to have been an exact and true copy, its correctness was neither admitted nor denied by the defendant in his amended answer, but the determining

feature upon a review is whether or not the finding of the trial court in this particular is supported by some evidence. The evidence of the attorney for the wife would be sufficient to sustain that finding where he stated:

"Mrs. Gott turned the contract which she and her husband signed over to me and I also took a carbon copy and I have that carbon copy with me now, and I would say that this is the carbon copy of the one which they executed."

There was further testimony to the effect that the carbon copy was a copy of the original signed by both parties. The court evidently gave credence to this testimony, and it was sufficient to support such finding.

Appellant complains that neither the allegations of the petition nor the proof offered by the plaintiffs cover the question of the possession of the real property involved in this case, and insists that the action for injunction without such necessary allegations and proof was actually converted into an action to quiet title, which could not be accomplished without allegations and proof of possession in the plaintiffs. The petition does not contain any specific allegation of possession in the plaintiffs. The evident theory of the plaintiffs was to enjoin and restrain the defendant from disposing of or encumbering the land in question and to confirm the title of the plaintiffs as heirs of the deceased owners by virtue of the elimination of the husband of the deceased by reason of the postnuptial contract, although the petition concludes with a prayer to quiet title. This omission or defect in the petition is, however, overcome by the allegations and prayer of the defendant in his answer, which allegations cover both ownership and possession and are followed by a definite prayer for the quieting of his title. If the petition lacked an element necessary to give jurisdiction in an action to quiet title all such elements were in the answer, and with jurisdiction thus conferred by the allegations of the answer, the court may determine the question of title as between the parties and grant relief to the party entitled thereto irrespective of whether plaintiffs or defendant was in possession. (*Reitz v. Cooper,* 123 Kan. 755, 256 Pac. 813.)

It was said in the case of *Robinson v. Mutchmore,* 128 Kan. 419, 278 Pac. 18:

"Defendant converted the action into one to quiet his own title by proper

allegations of possession and title and prayer for affirmative relief. The result was, the question whether plaintiff or defendant was in actual possession became immaterial." (p. 420.)

The main contention of the appellant is that notwithstanding the postnuptial agreement was in contemplation of separation, the resumption of marital relations constituted a rescission of the contract. Appellant recognizes the modification of the old common-law rule to this effect, as stated in the case of *Dennis v. Perkins,* 88 Kan. 428, 129 Pac. 165:

"Reconciliation and the resumption of marital relations do not necessarily avoid a separation agreement previously made by the parties, such effect depending on the question whether the provisions of the contract and the conduct and circumstances show an intention to treat the agreement as no longer in force." (Syl. ¶ 1.)

Recognizing that the modified rule prevails in Kansas, yet appellant insists the resumption of the relation of husband and wife was permanent in this case and would conclusively imply the abrogation of the contract. Counsel for appellant in support of this conclusion recounts the strong testimony defendant introduced along this line as to their living together in the same house just as they had always lived before making the contract and as to their having effected a complete reconciliation, and urges upon this court the consideration of the superior weight of such testimony. But it is beyond the province of a reviewing court to weigh conflicting evidence, which there is in this case, as this court is limited to the sole duty of determining if there was sufficient evidence to sustain the finding of the trial court that this contract "was in full force and effect at the time of the death of the said Effie C. Gott."

We find there was strong evidence both for and against the question of reconciliation and abrogation. On the side of the plaintiffs there were several letters written by the wife during this intervening period of seventy days after the execution of the contract and her death, indicating nothing but complete separation in every way, only defendant was permitted to remain at his former home, now conveyed to her in settlement of the loan she had made to him, until he could sell his cattle and personal property in February, and the time was definitely stated for his leaving on March first.

Much oral testimony is found in the record in support of the court's finding along the line of conversations had with the defendant and the wife separately as to their division of property and

separation. One forcible portion of it is from the testimony of the purchaser of a 200-acre farm from the defendant about the 18th or 20th of October, 1929, when the defendant told the purchaser of the contract which gave him a complete right to convey his property without the signature of his wife. Other evidence along the same line was given by the coroner and deputy sheriff who questioned him the day after the death of the wife about her sudden death. They relate his statements to them of a quarrel between them an hour prior to her death, being concerning the right to a certain $300 note which the wife had. Defendant claimed it belonged to him by reason of the contract of settlement between them.

The testimony as to the loss or destruction or whereabouts of the original contract is, to say the least, very confusing. There is no difficulty in finding ample evidence to support the finding of the court to the effect that the contract was still in force at the time of the death of the wife and that there had been no reconciliation between them or abrogation of the contract.

Appellant alleges that the court committed error in stating in the memorandum opinion that the postnuptial contract provided for its revocation or modification only by the written consent of both parties, and that the court did not find such in the evidence. It did so provide, and the court correctly stated such written revocation was not shown, but the court in the same connection in the same opinion proceeded to consider and discuss the oral evidence pro and con as to reconciliation and abrogation and gave full consideration to such oral evidence, which was as competent as written testimony notwithstanding the attempted limitation by the terms of the contract. That portion of the contract could be revoked as well as other portions thereof if the parties thereto mutually agreed to do so, without putting it in writing. (See 6 R. C. L. 922 and 13 C. J. 597.) The court in the consideration of the evidence and reaching a finding followed the rules stated in the Dennis-Perkins case, *supra,* in which it was said:

"Such reconciliation and resumption do not warrant the court in deeming such contract avoided any further, if at all, than its terms taken in connection with the situation and conduct of the parties indicate their intention to avoid it." (Syl. ¶ 2.)

"The truth is, and the law is, that having entered into a valid separation agreement the courts cannot and will not deem such contract avoided unless the conduct of the parties impels the conclusion that they themselves so regarded it." (p. 433.)

There is no question about the extent of the terms of this contract. It was unquestionably made in contemplation of separation, and each party thereto definitely renounced "all right, title or interest to all property, real or personal, present, future or contingent, of the other." And each party agreed that in case of death "the survivor shall not be entitled to receive or claim any portion of or interest in the separate property of the deceased owner."

The provisions of the contract are as sweeping and definite as in the early case of *King v. Mollohan,* 61 Kan. 683, 60 Pac. 731, where it was held that such a postnuptial agreement, when made understandingly, was not contrary to public policy, and that it barred the survivor from any share or interest, actual or contingent, in the property or estate of the deceased.

In the case of *Allen v. Allen,* 108 Kan. 765, 196 Pac. 1075, the court held with reference to a postnuptial contract:

"That in order to revoke such contract both parties to it must consider it annulled and that one of them alone could not set it aside, and that in passing upon the question whether it had been canceled by mutual agreement all the circumstances in evidence tending to prove the intention of the parties should be considered by the jury." (Syl. ¶ 1.)

"Agreements looking to such amicable settlement of property rights, entered into prior to the commencement of the suit, when untainted with fraud or collusion, and in the absence of coercion, intimidation, or undue influence, are also enforceable." (19 C. J. 340. See, also, *Ross v. Ross,* 103 Kan. 232, 173 Pac. 291; and *Arthur v. Moorhead,* 128 Kan. 421, 277 Pac. 1015.)

Appellant most earnestly contends that the husband could not be divested of his homestead right in the eighty-acre tract owned by his wife at the time of her decease, and cites the case of *Watson v. Watson,* 106 Kan. 693, 189 Pac. 949, which holds that an antenuptial contract providing that the wife shall have no part in the husband's estate in case she survives him will not deprive her of claiming her homestead right. An antenuptial contract is an agreement in contemplation of marriage, whereas a postnuptial contract is generally one in contemplation of separation. The former is providing and planning for a union of interest with some property modifications, the latter for a complete disunion of all domestic and property interests. Such a postnuptial agreement dispenses with all thought of home. Of course, there can be a postnuptial agreement which does not contemplate a separation, or, as shown in the Arthur-Moorhead case, *supra,* where originally contemplated and

later rescinded, did not modify or affect the terms of the agreement as to property rights. But such is not the case here. This contract contemplated separation, and by the finding there was no reconciliation as there was in the Arthur case, *supra*, so there was no basis or reason for homestead.

*Hoard v. Jones,* 119 Kan. 138, 237 Pac. 883; *Pattison v. Pattison,* 129 Kan. 558, 283 Pac. 483, and many other antenuptial contract cases are cited, but we think the conclusions reached in them are not pertinent to the homestead feature under a postnuptial contract.

The right of homestead may be divested by deed to third party, and the contract here is as complete as a deed could be as to the defendant disposing of all his future or contingent interests. Besides, he goes further and waives all future claims or rights of any and all kinds in or to the property conveyed to his wife under the terms of the contract. To hold that he had a homestead right or a right of inheritance after holding such contract to be valid would be a construction of it that would require the elimination and total disregard of many terms and phrases therein contained, which is not the usual and approved rule of construction.

Appellant alleges error in overruling his demurrer to the evidence of plaintiffs and his motion for a new trial. We find no error in these rulings, nor error in the rulings and findings heretofore considered, and conclude that the injunction was properly granted.

The judgment is affirmed.