No. 15,293.

CAMPBELL *v.* GOODBAR.
(134 P. [2d] 1060)

Decided February 23, 1943.

Mr. JOHN P. BECK, for plaintiff in error.

Messrs. WOOD, SHUTERAN, ROBINSON & HARRINGTON, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF in error, who was the defendant in the trial court where he was found guilty of contempt, presents this case here for review by writ of error, asking that the writ be made a supersedeas and operate accordingly. In compliance with his formal request, we have elected finally to determine the cause on the supersedeas application. Hereafter we shall refer to the parties as they appeared in the trial court.

Plaintiff obtained a decree of divorce from the defendant on September 15, 1936. On July 16, 1936, the same parties hereto had entered into an agreement, the first four paragraphs of which read as follows:

"1. The defendant shall pay forthwith the docket fee of $8.50, attorney's fees of $150.00 to the plaintiff's attorney, and $100.00 to the plaintiff.

"2. On or before August 1, 1936, the defendant shall pay or cause to be paid the bills owing by the parties hereto at Sterling, Colorado, amounting to approximately $150.00, and also the bills owing at Denver, amounting to approximately $100.00, provided, however, that the defendant agrees to pay immediately the bill to Dorothy Douglas.

"3. On or before August 16, 1936, the defendant

agrees to pay to the plaintiff an additional $100.00, and on or before September 16th and October 16th, 1936, an additional $100.00 on each of said dates, and on November 16, 1936, and each month thereafter for a period of six months, defendant agrees to pay to the plaintiff the sum of $75.00 per month, and thereafter and commencing on May 16, 1937, defendant agrees to pay the plaintiff the sum of $50.00 on the 16th day of each and every month for a period of fourteen months, all payments to be made into the registry of the Court. /Defendant also agrees to pay $30 premium on plaintiffs insurance policy JWC/

"4. The plaintiff shall have the right to all of the property now located in the apartment, except the personal belongings of the defendant, including one antique humidor."

The remaining paragraphs 5, 6 and 7 contain mutual releases. A copy of this agreement was filed with the clerk of the trial court on September 15, 1936, and the interlocutory decree of divorce, among other paragraphs, contains the following: "It is further ordered that the defendant make the payments into the registry of the Court which he agrees to make in the Agreement between the parties on file herein, and which is hereby approved, promptly when the same become due and payable, including the bill of Dr. H. S. Finney and all other doctor bills." The foregoing paragraph is the only place in the record of the divorce proceedings where reference is made to the agreement of settlement. It appeared nowhere in the pleadings, nor was it introduced in evidence at the time of the trial.

A final decree, in the usual form, was issued under date of March 16, 1937, ending with the customary recitation that "said interlocutory decree has become and now is a final decree of divorce, made and entered upon the terms and conditions contained in the interlocutory decree, or any modification or change thereof subsequently made by the court."

It appears that the payments to be made by the defendant to the plaintiff, if made according to the schedule in paragraph 3 of their agreement, would have been completed by July 16, 1938. Defendant apparently did not make all of his payments according to this schedule, for in June 1937 a contempt citation and order was issued out of the trial court and thereafter payments were made irregularly. On December 27, 1939, the plaintiff remarried.

On July 17, 1942, plaintiff filed her "Petition for Citation," praying that the trial court should cite defendant to appear and show cause why he should not be punished for his contempt in that previously the court had ordered the defendant to pay, in monthly instalments, the sum of $1,550 plus the further sum of $30 for an insurance premium, and that he had failed, neglected and refused to pay the balance due pursuant to the order of the court in the sum of $465 and was now in default of same. The same day the trial court issued an order for citation providing that the defendant, J. W. Campbell, should appear before the court on July 31st to show cause why he should not be adjudged in contempt of court for his failure and refusal to perform orders of the court. On August 15, 1942, through his attorney, he filed an answer setting up various defenses and praying that the petition for citation be dismissed and the order for citation quashed. The testimony of the plaintiff shows that she had received $1,115 up to December 22, 1939, leaving a balance due of $465. On November 6, 1942, the trial court found:

"That the defendant is in arrears Four Hundred Sixty-five ($465) Dollars in accordance with the contract made between the parties and on file herein and bearing date of July 16, A. D. 1936, and approved by the Court in its Interlocutory Decree September 15, A. D. 1936, and the Court further finds that the same is now due and payable. The Court is further of the opinion that the above contract was embodied in the Interlocu-

tory Decree and the payments to be made in the contract became an order of Court, and that the Court has the right and power to punish the defendant for contempt for failure to abide by the said contract and Court orders. Upon default and failure to make payments the Court feels that the matter can be set in the usual way for a citation on contempt.

On December 1, 1942, the following nunc pro tunc order was entered:

"And thereupon, this cause coming on for additional conference, the same is argued by counsel, and the Court being now sufficiently advised in the premises, doth order and adjudge that the defendant is guilty of contempt, and doth order the defendant to pay the sum of Four Hundred Sixty-five ($465) Dollars within thirty (30) days, or in default thereof sentences the defendant to forty-five (45) days in jail."

█ Whether the defendant herein is guilty of contempt involves the question as to whether or not this case comes under the rule laid down in *Kastner v. Kastner,* 90 Colo. 280, 9 P. (2d) 290, and more particularly in the recent case of *McWilliams v. McWilliams,* 110 Colo. 173, 132 P. (2d) 966. In the instant case the final decree made reference to the already existing property settlement and approved the same, and it will be noted that the trial court has interpreted that as synonymous with incorporation of the agreement in the decree; but in the Kastner case we said: "The mere reference to and approval of the 'property and financial settlement,' contained in the findings of fact and conclusions of law and the final decree of the court, did not operate to make the independent contract of the parties a part of, and enforceable as, a preliminary on [or] final decree of court. There was, therefore, no court order with reference to temporary or permanent alimony, or support money * * *."

█ It is urged that the instant case differs from the Kastner case, supra, in that there is a provision in the

decree that the defendant pay into the registry of the court the amounts for which he is liable under the agreement. But that still does not overcome or dispense with the rule which we laid down in *McWilliams v. McWilliams, supra,* that "The stipulation and property settlement having been approved by the court, but the terms thereof not having been set forth in the decree of divorce, the rights of the parties rest upon the contract and not upon the decree, and are contractual and not decreed rights and obligations."

■ ■ The instant case illustrates the unwisdom of allowing incorporation of a separate agreement by reference. At the time the interlocutory decree was entered, nothing appears of record to show what portion of the then two months old contract of settlement had actually been performed and what had not. Defendant's answer in the contempt proceedings contained the allegations that plaintiff had withheld some of his property to which he was entitled and that the bills in Sterling and Denver, which he had agreed to pay in the amounts set forth in the agreement, turned out to be considerably larger, due to failure of plaintiff to disclose all of the indebtedness she had incurred. The validity of such defense is not before us, but it is apparent that such a contract might set up impossible conditions for "it is a matter of common knowledge that such agreements often contain provisions which cannot be specifically enforced and it would be idle for a court to make a mandatory order directing the performance of such provisions." *Plummer v. Superior Court,* 20 Cal. (2d) 158, 124 P. (2d) 5. We believe therefore that the rule we stated in *McWilliams v. McWilliams, supra,* makes for more certainty, i.e.: that "If the property rights and obligations of the parties to a divorce action, who have entered into a settlement agreement, are to rest upon the decree therein, then any such agreement as to those rights and obligations should be fully and specifically set forth in the decree, *in order that the duties imposed*

*upon, and the rights granted to, the parties, can be ascertained from the decree itself."* (Emphasis ours.) This is a rule that seems to find acceptance in other jurisdictions. *Schnerr v. Schnerr,* 128 Cal. App. 363, 17 P. (2d) 749; *Ridenour v. Ridenour,* 174 Wash. 152, 24 P. (2d) 418; *Plummer v. Superior Court, supra; Shafer v. Shafer,* 257 Mich. 372, 241 N.W. 144; *Peden v. Peden,* 259 Mich. 559, 244 N.W. 162.

The judgment is reversed and the cause remanded with instructions that further proceedings, if any, shall conform with the views herein expressed.

Mr. Justice Bakke specially concurring.

I dissented in the case of McWilliams v. McWilliams, but since it has become the law in this jurisdiction I now concur in this opinion.