## No. 16,003.

UNITED STATES NATIONAL BANK OF DENVER ET AL. *v.* BARTGES.

(210 P. [2d] 600)

Decided July 14, 1949. Rehearing denied October 3, 1949.

318

Messrs. BROCK, AKOLT & CAMPBELL, Mr. KARL F. CRASS, Mr. JOHN P. AKOLT, JR., for plaintiffs in error.

Messrs. FOULSTON, SIEFKIN, SCHOEPPEL, BARTLETT & POWERS, Mr. GEORGE SIEFKIN, Mr. JOHN F. EBERHARDT, Mr. MAX D. MELVILLE, Mr. DON D. BOWMAN, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

DEFENDANT in error was plaintiff in the trial court. She brought this action against George P. Dickey her former husband. During the pendency of the action in the trial court Dickey died and plaintiffs in error, being the executors of his estate, were substituted as defendants. References to the parties will be made as they appeared in the trial court, or by name.

Plaintiff and Dickey for a long time prior to February 7, 1944, were residents of Wichita, Kansas. They married in June of 1924, at which time plaintiff was eighteen years of age and Dickey was thirty-eight. At the time of the divorce proceedings, hereinafter mentioned, they had two living children of the ages of eighteen years and five years. On October 27, 1943, the plaintiff filed an action for divorce in the district court of Sedgwick county, Kansas, in which she alleged, in addition to the statutory ground for divorce, that since their marriage plaintiff and Dickey had jointly accumulated a large amount of property, most of which stood in the name of Mr. Dickey. She asked the entry of a divorce decree

and prayed that she be given such portion of Dickey's property as might be awarded to her by the court pursuant to law, for costs, attorney fees and suit money, and for custody of the two minor children.

Dickey filed his answer on December 13, 1943, in which he denied the existence of grounds for divorce alleged by plaintiff. He admitted that some property had been accumulated by him during the married life of the parties, most of which was held in his name. In his cross petition, in which he sought a divorce, he alleged statutory grounds for procurement thereof. On December 15, 1943, in said action plaintiff filed a motion for attorney fees and for a property statement in which she sought from Dickey a "full and complete statement of all properties, whether real, personal, or mixed, owned by this defendant, stating the legal description of all property, including its value and location, the names, amounts, and serial numbers of all stocks and bonds owned by said defendant, and a complete list of each and every and all of the property owned by said defendant." This motion was never called up for hearing and appears to have been withdrawn at the time of the entry of the interlocutory decree. Following the filing of the motion demanding a disclosure by Dickey of the extent, location and value of his property, he furnished a financial statement which upon its face did not show the value of his holdings, but only investment costs. Thereafter Dickey and the plaintiff, through their attorneys, carried on negotiations concerning a settlement which ultimately resulted in an agreement between them which provided that the wife should receive, in addition to some minor items of no material import, the sum of $325,000.00. Actually $250,000.00 of this sum was placed in an irrevocable trust to provide the wife with the sum of $550.00 per month for life, conditioned further that upon her death any corpus remaining in the trust would become a part of a trust for her two children which theretofore had been estab-

lished by Mr. Dickey. Prior to the divorce action Dickey had created a trust of $250,000.00 for Mrs. Dickey and this trust contained a provision that in the event of Mrs. Dickey's death, or her ceasing to be his wife, the trust should be maintained for the children. This trust was terminated and any interest of Mrs. Dickey therein was surrendered by the settlement.

On February 7, 1944, in the Kansas divorce case, Dickey withdrew from the consideration of the court his motion for a bill of particulars together with his answer and cross-petition and the cause proceeded as a non-contested case. The plaintiff introduced evidence in support of her complaint and was granted an interlocutory decree of divorce. The said decree contained, inter alia, the following:

"Thereupon, it was announced to the court that the parties hereto had reached an amicable settlement, concerning their property and property rights, which property settlement was by the parties submitted to the court for consideration of the court, and the court being duly advised in the premises, finds that said property settlement, under the circumstances, is a fair and equitable division of the properties accumulated by the parties during said marriage and that the same should be approved by the court.

\*　　\*　　\*

"Second: That the property settlement made between the parties hereto be, and the same is hereby, approved by the court, and that said division of property and the settlement of their mutual rights is fair, reasonable and equitable under all the circumstances, and that the court makes no order for the payment of any alimony to the plaintiff in this case.

\*　　\*　　\*

"Seventh: It is further ordered by the court that each of the parties hereto be, and they each are hereby permanently and perpetually enjoined from claiming or asserting any right, title or interest in and to the prop-

erty of the other as the same is established by the property settlement of the parties, or in and to any property which either party may hereafter acquire by purchase, gift, descent, or otherwise."

It is clear from the record that the only evidence submitted for the consideration of the court in the divorce action was that relating to the existence of grounds for divorce, and the approval by the court of the property settlement agreement was entered upon the stipulation of the parties and not upon any opinion of the court, based upon evidence concerning the adequacy or fairness thereof.

Shortly after the granting of the divorce decree plaintiff married a Mr. Bartges, who had been an employee of the Dickeys, and plaintiff and her new husband took up their residence in Pueblo, Colorado. Mr. Dickey became a resident of Denver, Colorado.

On September 1, 1945, plaintiff filed her complaint in this action alleging fraud on the part of Dickey in the procurement of the property settlement agreement, and asking judgment for damages in the sum of two million dollars. The defendants moved to dismiss on the ground that the court lacked jurisdiction of the subject matter for the reason that the original controversy had been determined by the district court of Sedgwick county, Kansas, and that in this action the plaintiff sought an additional division of property, and the jurisdiction of the subject matter, if any, existed only in the said Kansas court. This motion was denied on July 1, 1946, and defendants answered setting up thirteen defenses, the essence of which will be hereinafter considered.

The trial court entered its findings and decree on September 10, 1947, which contain the following specific statements:

"First: That at the time of the marriage of the parties George P. Dickey was possessed of little means and that the sizeable estate of which he eventually became

possessed, amounting to somewhere between five and six million dollars, was accumulated during the married life of the parties;

"Second: That George P. Dickey was not guilty of any affirmative fraud in the presentation of the statement of his financial worth which was furnished in pursuance of the motion made for a disclosure of his property. * * *

"Third: The evidence further shows and convinces the Court that the matter of George P. Dickey's wealth did not seriously enter into the negotiations of the parties whereby there was contemplated any real division of property based on the marriage relation that had existed for twenty years. That neither Mrs. Dickey nor her counsel, Mr. Foulston was under any duress during the negotiations, nor was there any coercion on the part of Mr. Dickey or his counsel in the making of the settlement agreement. That any duress or coercion was created by Mrs. Dickey herself due to her conduct so that she could marry Mr. Bartges as soon as possible.

* * *

"Fifth: That the settlement made by Dickey on his wife of twenty years, considering his wealth, was niggardly and, to say the least, not what her counsel would have accepted for her, nor what any court would have granted her, providing there had not been conduct on her part that resulted in this settlement.

* * *

"To the third question, while the Court cannot condone the misconduct of the plaintiff and the same is to be censured in positive terms, nevertheless, despite her misconduct the Court feels that she is entitled to further consideration in this matter by reason of the fact that the contract of settlement on its face, considering Mr. Dickey's wealth, was inadequate and unfair.

* * *

"* * * he [Dickey] was therefore guilty of extrinsic fraud in entering into such an agreement."

. The trial court decreed that the defendants be required to establish for the benefit of plaintiff a trust sufficient to produce an additional sum of $450.00 per month; that said trust agreement should be irrevocable and should "comprise the same terms and agreements as contained in the irrevocable trust agreement" created pursuant to the separation agreement of February 7, 1944. Following the entry of these findings defendants moved for an amendment thereof to include findings relating to the applicable law of the State of Kansas, and upon stipulation of the parties the amendment to the findings was ordered. It was thus found that the applicable law of Kansas was as set forth in certain statutes in the State of Kansas, to which reference was made, and as further declared in eighty-eight decisions of the Supreme Court of Kansas, citations to which were made by title of the case and reference to official reports. The findings of the trial court included the following: "The Court finds that at all times pertinent to the issues in this case the law of Kansas was as set forth and declared in the above statutes and Kansas Supreme Court decisions and opinions."

The defendants have filed cross specifications of points based upon the failure of the court to find that Dickey was guilty of affirmative fraud and affirmative duress; and for not granting the plaintiff an outright money judgment in lieu of creating a spendthrift trust for her use and benefit. It is conceded that the laws of Kansas control on the substantive matters here involved, and that procedural matters are governed by the laws of Colorado.

The contending parties each claim support for their respective positions in the array of authorities found by the trial court to declare the law of Kansas. We first consider the points urged by defendants as grounds for reversal.

Questions to be Determined.

■ First: *Under the foregoing state of facts, does*

*the Colorado court have jurisdiction over the subject matter of this action?*

Counsel for defendants argue that under Kansas law a wife can acquire no interest in the property of her husband except by property division or through court order as an incident to divorce proceedings; that only the Kansas divorce court has jurisdiction over a property division between husband and wife; and that, no motion to vacate the Kansas divorce and property division decree having been filed in the divorce court within the time permitted by the Kansas laws, and no appeal having been taken from such decree to the Kansas Supreme Court, and the time having expired within which such appeal might have been taken, no court, even of Kansas, could now grant relief to the plaintiff.

Section 60-1511 of the General Statutes of 1935 of the State of Kansas, as amended, provides in substance, where a divorce is granted by reason of the fault of the husband, that the wife shall have restored to her all the property owned by her before her marriage or acquired in her own right after marriage and shall be allowed such alimony as the court shall order. The statute further provides, in the event a divorce is granted by reason of the fault of the wife, that the whole property owned by her prior to the marriage or separately acquired after marriage shall be restored to her, "and also the court may award the wife such share of her husband's real and personal property, or both, as to the court may appear just and reasonable; and she shall be barred of all right in all the remaining lands of which her husband may at any time have been seized. And to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties and requiring the

other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. \* \* \*" Thus by the terms of the Kansas statute, without regard to the fault of either party in committing acts warranting a divorce in favor of the other, the wife is entitled to a division of the property "acquired by the parties jointly during their marriage." The right to this division of property under Kansas law is separate and distinct from alimony. In *Cummings v. Cummings,* 138 Kan. 359, 26 P. (2d) 440, the Supreme Court of Kansas stated, "Alimony has for its basis right to maintenance only. Division of property has for its basis right to a just and equitable share of property."

It is to be noted that those parts of the separation agreement, providing for a property division, were not incorporated in the divorce decree. Only by reference to said agreement did the court approve the terms thereof. It is essential, therefore, to determine whether or not the terms of the property settlement agreement were decreed by the Kansas court so as to incorporate them in the final judgment of the Kansas divorce decree. If the terms of the settlement are a part of the judgment of the Kansas court then that judgment could not be assailed in the Kansas court for the reason that more than two years had elapsed after the rendition of the judgment and the Kansas statutes (General Statutes of of Kansas, 1935, §60-3007 and §60-3008) provide in substance that a Kansas district court shall have power to vacate or modify its own judgments "for fraud, practiced by the successful party, in obtaining the judgment or order." Said statutes further provide that any proceeding to modify a judgment obtained by fraud practiced by the successful party, "must be commenced within two years after the judgment was rendered or order made."

■ We hold that under the applicable law of Kansas there was no "adjudication" of the settlement agreement by the Kansas divorce court, and that said agreement was not merged in the divorce decree by the ref-

erence to it and approval of the agreement which the trial court entered upon request of the parties. The parties in the divorce case in legal effect withdrew the property division issue from the consideration of the court by their contract of settlement, and their property rights thereafter became and remained contractual. The issue of fraud in the procurement of said agreement was not raised by the pleadings in the Kansas court and no evidence was considered on any issue of fraud. While it is true that by their pleadings the parties raised an issue of property rights and sought judicial division of the property, subsequently by contracting with regard thereto, they effectually withdrew that issue from the case. Under the law of Kansas the contract became binding and conclusive upon the court, and deprived the court of jurisdiction to adjudicate the property rights in the absence of any issue raised in the divorce action concerning fraud, duress, concealment or undue influence, or other grounds for invalidating the agreement.

We consider the case of *Petty v. Petty,* 147 Kans. 342, 76 P. (2d) 850, and the other decisions of the Supreme Court of Kansas, there cited, sufficient authority for this conclusion. In the Petty case, a decree of divorce was granted the husband. About four years prior to the entry thereof the parties had entered into a written "Separation Agreement and Property Settlement." The wife, in the divorce action, asked custody of the children and that the trial court approve the said separation agreement. The trial court refused to approve the agreement and entered findings that, it was "unfair, unreasonable and unjust." The Supreme Court of Kansas, in reversing the judgment, said:

"Counsel for appellant contends the court erred in finding the separation agreement unjust and unreasonable, that it was not freely and intelligently made by plaintiff, that it is indefinite, and in holding it to be void. There is merit in this contention. As previously

noted, its validity does not appear to have been put in issue by the pleadings."

\* \* \*

"In passing on the validity of the agreement, when judgment was rendered the trial court had nothing before it but the agreement itself and defendant's request in her cross petition that it be approved. We have the agreement before us and can read it and determine its meaning and validity as well as the trial court could do."

In the Petty case, the court referred to *Hyde v. Hyde*, 143 Kan. 660, 56 P. (2d) 437; Id., 147 Kan. 134, 75 P. (2d) 1023, and analyzed the holding in that case as follows:

"Pending a divorce action, the parties made an agreement as to the custody of their daughter and the sum the husband would pay the wife for her care and maintenance. They executed this and had it embodied in the decree of divorce. Later the wife brought a separate suit for the specific performance of the contract. A decree was entered. Later the defendant moved to modify the sum to be paid, contending the court had the same right to modify the decree in that respect that it would have to modify a decree entered under the statute in a divorce case with respect to the amount the husband should pay for the support of a child. The court declined to follow that view. The parties were competent to contract, they had done so, the contract set out the conditions under which the amount to be paid could be modified, and in that respect the rights and liabilities of the parties were governed by the terms of the contract, not by the statutory authority of the court in divorce cases."

In concluding its opinion the court stated:

"A husband and wife are competent parties to agree between themselves upon a division of property and payments to be made by the husband for the support of the wife. When such agreements are fairly and intelligently made—that is, when they are not induced by fraud, duress, concealment, or undue influence, not the

result of mutual mistake, and when the parties fully understand what they are doing—they are uniformly upheld by the courts. (13 C.J. 465, 466; *King v. Mollohan,* 61 Kan. 683, 60 Pac. 731; *Dondelinger v. Dondelinger,* 101 Kan. 179, 165 Pac. 849; *Blair v. Blair,* 106 Kan. 151, 186 Pac. 746; *Bradley v. Burgess,* 109 Kan. 347, 198 Pac. 967; *Dutton v. Dutton,* 113 Kan. 146, 213 Pac. 326; *Arthur v. Moorhead,* 128 Kan. 421, 277 Pac. 1015; *Hewett v. Gott,* 132 Kan. 168, 294 Pac. 897.)

"Courts have no authority to ignore a contract, fairly and intelligently made by the parties, and to make another for them. (*Shaffer v. Shaffer,* 135 Kan. 35, 10 P. 2d 17.)

"It was error for the court to hold this agreement void."

▬ No issue of fraud, actual or constructive, was involved in the Petty case and no such issue was present or considered by the divorce court at the time of the divorce decree. In the case at bar the divorce court had no power to disapprove the contract of Mr. and Mrs. Dickey. *Perkins v. Perkins,* 154 Kan. 73, 114 P. (2d) 804. The fact that the divorce court stated by formal pronouncement that the agreement was "fair and equitable" under the circumstances here present, does not have the effect of merging the agreement into the decree. Thus the action of the plaintiff is one which assails the contract, and not the decree of the divorce court. It follows that the trial court had jurisdiction of the subject matter of this action.

▬▬ Second: *Is the decree of the Kansas Divorce Court res judicata as to the issues involved in this action so as to require reversal of this judgment as being violative of the full faith and credit clause of the Constitution of the United States?*

In answering this question in the negative we consider the foregoing discussion again applicable. Additional grounds for the negative answer are apparent. In the divorce action, the terms of the settlement contract

were not set forth in the divorce decree. There is only a reference to the contract. Since the contract is not merged in the decree, the property settlement issue does not become res judicata. This unquestionably is the law in Colorado. *Kastner v. Kastner,* 90 Colo. 280, 9 P. (2d) 290; *McWilliams v. McWilliams,* 110 Colo. 173, 132 P. (2d) 966; *Campbell v. Goodbar,* 110 Colo. 403, 134 P. (2d) 1060; *Edwards v. Edwards,* 113 Colo. 390, 157 P. (2d) 616. Counsel for defendants state in their brief that they have found no Kansas case in which the question. of the necessity for incorporation at length of a property division agreement in the divorce decree has been decided. They contend that the inference of some cases is that such incorporation is not necessary. We cannot agree with this contention. In the absence of a definite showing to the contrary, the presumtion is that the common law of Kansas is the same as that of Colorado. *Fern v. Crandell,* 79 Colo. 403, 246 Pac. 270.

In *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430 (64 Sup. Ct. 208, 88 L. Ed. 149), the Supreme Court of the United States stated: "* * * the clear purpose of the full faith and credit clause [is] to establish * * * that a cause of action merged in a judgment in one state is likewise merged in every other." It follows that where, as here, there is no merger, and no valid adjudication of an issue in the Kansas court, res judicata is inapplicable and there is no Kansas judgment to which the Colorado court must give full faith and credit.

Third: *Where plaintiff wife's complaint in fraud action charges specific false representations on the part of defendant husband as inducement to plaintiff to execute property settlement contract, can she recover upon the theory of extrinsic or constructive fraud under section 15 (b) Rules of Civil Procedure, after failure to establish the affirmative fraud alleged in the complaint?*

This question can be determined only by an examination of the record to ascertain whether or not an issue of extrinsic or constructive fraud, unquestionably not

raised by the pleadings, was in fact tried by express or implied consent of the parties. If such issues were thus tried, the failure of plaintiff to amend her complaint would not "affect the result of the trial of these issues." *Toy v. Rogers,* 114 Colo. 432, 165 P. (2d) 1017; R.C.P. Colo., Rule 15 (b); *Scheller v. Mawson,* 117 Colo. 201, 185 P. (2d) 1009.

In volume 2, '35 C.S.A., containing our Rules of Civil Procedure, at page 449, there appears the text of an able lecture by Mr. Thomas Keely concerning the purpose and effect of the said rules. It was prepared and delivered by him as a prominent member of the revision committee of the Colorado Bar Association for the benefit of the bench and bar of this state just prior to the effective date of the Rules. At page 461 we find among others, the following statements by Mr. Keely concerning the effect of Rule 15 (a) (b):

"Remember that causes of actions or, perhaps more properly referred to, definite theories of causes of action, should have no proper place in applying the rules.

\* \* \*

"The force of our last comment is illustrated by Rule 15 (b). When issues not raised by the pleadings are tried by express or implied consent, amendments in the pleadings may be made to conform to the evidence either before or during the trial, or even after judgment, but the failure to amend does not affect the result of the trial of the issues.

\* \* \*

"It seems fairly evident that the idea that any party should be held to a theory of a cause of action or defense is out of place under Rule 15 (b). The judges in interpreting and applying the rules should see that it remains out of place."

Since the adoption of the rules our court has given the liberal interpretation to Rule 15 (b) which was recommended in the foregoing quotations.

At the very outset of the trial of this cause plaintiff's

attorney in his opening statement disclosed that she was not relying upon the particular false representations alleged in the complaint as a basis for recovery except as the "balance sheets" referred to in the complaint were evidence of concealment of assets by Mr. Dickey. In opening his case the attorney for plaintiff stated:

"Now the position that we are taking in this case is that there was a concealment of actual assets and worth of George F. Dickey throughout the entire proceedings; whereas the husband is supposed to deal fairly and honestly and make full disclosure to his wife in a matter of this kind, he did not disclose and, of necessity, of course, concealed from her the facts.

* * *

"It is our position that the law of Kansas is this, in substance; that in a divorce proceeding of any kind, regardless of whose fault it may be, that jointly-accumulated property shall be fairly and equitably divided between the husband and wife. He is under the absolute duty of making a full disclosure of assets and of value, and that the division in the ordinary case should be approximately half, and seldom if ever less than one-third."

Defendants interposed no objection at any time on the ground of variance, either to the opening statement of counsel for plaintiff or to any evidence offered in support of plaintiff's case as outlined in said opening statement. The defendants in fact contested the nonpleaded issue of fraudulent nondisclosure of assets. We hold that the trial court did not err in considering the question of extrinsic or constructive fraud, for the reason that those issues were tried "by express or implied consent of the parties," within the meaning of Rule 15 (b), supra.

 Fourth: *Does this record justify relief to plaintiff based upon the constructive or extrinsic fraud of nondisclosure of assets?*

We consider briefly the law of the State of Kansas relating to the necessity for fair dealing and full dis-

closure concerning separation agreements between husband and wife. We agree with counsel for plaintiff when they say in their brief that under Kansas law:

"1. Between husband and wife a de jure fiduciary relationship exists which requires the husband to exercise utmost good faith in all dealings with his wife.

"2. Applied to settlement agreements, this rule demands that the husband make a full and complete disclosure to his wife of the nature, extent, and value of all his property.

"3. Moreover, where, as in the case at bar, an executed settlement agreement is inadequate or disproportionate, the law presumes the husband guilty of concealment and overreaching, and casts upon him the affirmative burden of overcoming such presumption by positive evidence."

Many cases might be cited in support of these statements. We quote but from two:

In *Cessna v. Cessna*, 155 Kan. 856, 130 P. (2d) 560, we find: "The rule as laid down in 30 C.J. 1060 is as follows: 'It must appear that the husband exercised the utmost good faith; that there was a full disclosure of all material facts, including the husband's circumstances and any other fact which might affect the terms of the contract; and that the provisions made in the agreement for the wife are fair, reasonable, just, equitable, and adequate in view of the conditions and circumstances of the parties at the time, that is, in view of the property of the husband, the needs of the wife, and their station in life.' See, also, note at page 823 of 5 A.L.R."

In *Watson v. Watson*, 104 Kan. 578, 182 Pac. 643: "The rule seems to be well settled that if unreasonable inadequacy or disproportion appears, the presumption of concealment is raised, and the burden is upon the husband, or those claiming under him, to show full disclosure. The relation between those about to become husband and wife is deemed one of unbounded confidence, especially on the part of the woman. 13 R.C.L. 1034,

§54. 'Good faith is the cardinal principle in such contracts. If the provision made for the wife is unreasonably disproportionate to the means of the husband, the presumption of designed concealment is raised, and the burden of disproving the same is upon him.' (21 Cyc. 1250.)"

There was substantial evidence supporting the finding of the trial court that the settlement agreement was "inadequate and unfair," and that Dickey was guilty of extrinsic fraud in executing it. The question under consideration is accordingly answered in the affirmative.

Fifth: *Did the trial court err in substituting the executors of Dickey's estate as parties defendant upon Dickey's death during the pendency of the proceedings in the trial court?*

This question must be answered in the negative. The constructive fraud of which the trial court found Dickey to be guilty deprived the plaintiff of property rights as distinguished from those arising from personal injuries, and at common law would have survived without the aid of a survival statute. *Seamans v. Brown,* 109 Kan. 448, 199 Pac. 473; *Micheletti v. Moidel,* 94 Colo. 587, 32 P. (2d) 266; *Vragnizan v. Savings Union Bank & Trust Co.,* 31 Cal. App. 709, 161 Pac. 507. The law of the place where the wrong was committed determines whether or not a cause of action survives the death of the wrong doer. Restatement of the law—Conflict of Laws, p. 477, §390. Two Kansas statutes relating to survival of causes of action and to survival of pending actions are conclusive against the contention of defendants. They are Kan. 1947 Supp. 60-3201 and G.S. Kan. 1947 Supp. 60-3203.

Sixth: *Should the plaintiff be denied relief upon the ground that her damage cannot be measured by any rule of law and is so speculative as to permit no legal assessment of the amount thereof?*

The answer is "no." Defendants rely upon the general rule that fraud without legal damage or injury is

not remedial. Defendants argue in their brief: "She sought to recover in this action the difference between what she obtained under the property division agreement and what she would have obtained if the alleged fraud had not been committed. However, any such additional money or property she could only obtain through a different contract with Dickey or through a decree of the court awarding her a more beneficial division. In other words, her measure of damages is a speculation upon one or both of two things, namely, how much more the Plaintiff and Dickey would have agreed upon if there had been no fraud as alleged, or how much more the Kansas divorce court in its discretion would have allowed had there been no fraud as alleged."

It is a sufficient answer to this argument to state that the measure of plaintiff's damage is the difference between what she received under the fraud induced agreement and what she would have received upon a fair, equitable and just division of property as is made mandatory under the law of Kansas. The amount of this difference can be as correctly determined by the Colorado Court as by any other. In *Westesen v. Olathe State Bank,* 75 Colo. 340, 225 Pac. 837, we stated:

"Where the cause of the damage is established, that the amount or extent of damages is uncertain is no objection. 'Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach alleged are they to be rejected as too remote, or conjectural or speculative.' *Rule v. McGregor,* 117 Iowa, 419, 90 N.W. 811; 17 C.J. 756.

"In *Denver v. Bowen,* 67 Colo. 315, 184 Pac. 357, we said that the fact that such loss cannot be exactly determined is no reason why a wrong should go unredressed,

or the wrongdoer escape entirely at the expense of his victim."

In *Story Parchment Co. v. Patterson Paper Co.*, 282 U.S. 555, 564, 51 Sup. Ct. 248, 75 L. Ed. 544, the United States Supreme Court said: "It is true that there was uncertainty as to the extent of the damage; but there was none as to the fact of the damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable a jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount."

 Seventh: *Was reversible error committed by the trial court under specification of points not hereinabove considered?*

We have carefully studied all points urged by defendants as grounds for reversal. We find no reversible error under the specifications relating to the admission of evidence. The contention of defendants, that the property of Dickey is not of the class which is subject to property division under the law of Kansas, is without merit. The argument that any judgment in favor of plaintiff should be limited to payment out of assets of the Dickey estate not inventoried within six months from the appointment of the executors is untenable.

 Eighth: *Did the trial court err in creating a "spendthrift" trust for the benefit of plaintiff in lieu of a specific award of money damages?*

Plaintiff's counsel by cross specification of points contend that the trial court erred in awarding her relief by creating a trust for her benefit to yield the sum of $450.00 per month for life. They contend that she was entitled to a lump sum money judgment, and that the trial court exceeded its jurisdiction in denying to her the unrestricted control over the amount she was en-

titled to receive. We think counsel are correct in this contention.

This case was tried as an action for damages for fraud on the part of Dickey in connection with a property settlement. The court found that a constructive fraud was committed by Dickey. The trial court was not sitting as a divorce court, and erroneously placed limitations upon the relief granted plaintiff which would only be permissible in a divorce action. In *Hough v. Lucas,* 76 Colo. 94, 230 Pac. 789, we quoted with approval the following statement: " 'Jurisdiction includes not only the power to hear and determine a cause, but to enter and enforce a judgment. If there is no right in the court to enter the particular judgment entered, the entry is without jurisdiction. *Tebbetts v. People,* 31 Colo. 461, 473, 13 Pac. 869; *People v. Burke,* 72 Colo. 486, 212 Pac. 837, 844; *Windsor v. McVeigh,* 93 U.S. 274, 23 L. Ed. 914. In the last-named case the court points out that, if a court having jurisdiction of the parties and the subject matter, renders a judgment in which it transcends the power conferred by law, in so doing it acts without jurisdiction, and its judgment is void.' *Williams v. Hankins,* 75 Colo. 136, 225 Pac. 243."

Without doubt the trial court had the best interests of plaintiff in mind in creating the "spendthrift" trust to which objection is made. But, however advisable such an arrangement might be, it cannot legally be forced upon her.

The judgment of the trial court is affirmed in so far as it sustains the right of plaintiff to recover damages. The judgment is reversed in so far as it purports to create a trust for the benefit of plaintiff. The cause is remanded with directions to enter a money judgment for such sum as shall be determined by the court, from the evidence heard upon the trial, as will result in a fair and equitable division of property as required under Kansas law. All costs of suit should be taxed against the defendants.

Mr. Justice Jackson dissents.

Mr. Justice Alter.

I entertain an abiding conviction that the trial court lacked jurisdiction over the subject matter of this action, and I concur in that part of the order reversing the judgment; however, I believe our final order should include a remand of the cause with direction to the trial court to dismiss the case.