## No. 16,555.

UNITED STATES NATIONAL BANK OF DENVER ET AL.
*v.* BARTGES.
(224 P. [2d] 658)

Decided October 2, 1950. Rehearing denied November 20, 1950.

Mr. KARL F. CRASS, Messrs. AKOLT, CAMPBELL, TURN-QUIST & SHEPHERD, Mr. JOHN P. AKOLT, JR.; Messrs. HOLME, ROBERTS, MORE, OWEN & KEEGAN, Mr. PETER H. HOLME, JR., on petition for rehearing, for plaintiffs in error.

Messrs. FOULSTON, SIEFKIN, SCHOEPPEL, BARTLETT & POWERS, Mr. JOHN F. EBERHARDT, Mr. MAX D. MELVILLE, Mr. DON D. BOWMAN, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE have had this cause before us on a prior occasion. See, No. 16003, *United States National Bank v. Bartges,* 120 Colo. 317, 210 P. (2d) 600. The facts giving rise to the controversy are fully set forth in that case and no good purpose would be served by repeating them. For

reasons fully set forth in our former opinion, we remanded the cause for further proceedings, with direction to the trial court as follows: "The cause is remanded with directions to enter a money judgment for such sum as shall be determined by the court, from the evidence heard upon the trial, as will result in a fair and equitable division of property as required under Kansas law."

Pursuant to this mandate the trial court reconsidered the case and entered formal findings, the pertinent parts of which are as follows:

"The court feels that a just, fair and equitable division, based on the worth of George P. Dickey as of February 7, 1944, could well be based on a finding that at that date he was worth between five and six million dollars. But so that there be no question as to his worth, certainly the evidence in this case discloses that on February 7, 1944, conservatively and without any question of doubt, George P. Dickey was worth $3,800,000.00.

"Counsel for plaintiff have indicated that they would be satisfied with a third of his worth, but the court feels that such a division would be too small and feels that an allowance of fifty per cent of that amount, or $1,900,-000.00, is a just and equitable division. To be credited on that amount is the sum of $325,000.00, the amount she previously received in the divorce settlement.

"Certainly if Mrs. Bartges had, on February 7, 1944, insisted on and been awarded by the Kansas court a division in kind, she would have profited much more than by the money judgment this court is now entering of $1,575,000.00."

Judgment was entered in favor of defendant in error in the sum of $1,575,000.00, to review which, plaintiffs in error bring the case here by writ of error. In the specification of points filed by plaintiffs in error, there are set forth sixteen separate grounds upon which reversal of the judgment is urged. Specifications numbered 1 to 10 inclusive relate to matters argued at length by plaintiffs in error in their original briefs and petition for

rehearing in cause No. 16003. Having once decided those questions on the former hearing we do not consider them further, except to quote a pertinent paragraph from the opinion of Mr. Justice Knous in *Ginsberg v. Bennett,* 106 Colo. 285, 104 P. (2d) 142, as follows: "Every question now raised by plaintiffs was presented in their original briefs and motion for rehearing in Case No. 13,883, and therein were determined adversely to them. Under such circumstances it is not permissible to resubmit questions previously decided in the former proceeding in error, since the opinion therein and the judgment entered in conformity therewith constituted 'the law of the case,' which must control."

Specification of Points numbered 11 to 16 inclusive are combined and argued by attorneys for plaintiffs in error under one heading as follows: "The Trial Court Failed And Refused To Follow The Mandate Of This Court In Cause No. 16003. Its Findings Of Fact Purporting To Support Its June 7, 1950, Judgment Are Not Supported By The Evidence, But Are Contrary To The Evidence And Are Arbitrary And Capricious. The June 7, 1950, Judgment Is Without Support of Law Or Fact And Is Arbitrary, Capricious And Unprecedented And Said Judgment Is In Violation Of The Right Of 'Liberties', The Due Process, Impairment Of Obligation Of Contract And Other Provisions Of The Federal, Kansas And Colorado Constitutions."

Analysis of specifications 11 to 16 leads us to the conclusion that all questions argued, except those hereinafter discussed, have been answered by our opinion in cause No. 16003, supra.

Questions to be Determined.

First: *Is the judgment, of which complaint is here made, consistent with the mandate of this court in cause number 16003?*

█ This question is answered in the affirmative. Counsel for plaintiffs in error contend that the trial

court did not follow our mandate in cause No. 16003 in the rendition of the judgment to which the writ of error issued herein is directed. The trial court, in the judgment reviewed in cause No. 16003, ordered that plaintiffs in error should establish an irrevocable trust sufficient to provide an income of $450.00 per month for defendant in error, in addition to the benefits she theretofore had received under the terms of a separation agreement with her husband. In considering that judgment we said: "The judgment of the trial court is affirmed in so far as it sustains the right of plaintiff to recover damages. The judgment is reversed in so far as it purports to create a trust for the benefit of plaintiff. The cause is remanded with directions to enter a money judgment for such sum as shall be determined by the court, from the evidence heard upon the trial, as will result in a fair and equitable division of property as required under Kansas law."

Plaintiffs in error contend that under this mandate, the trial court could only award the defendant in error a sum of money sufficient to yield a monthly income of $450.00 per month, because, as argued, the first judgment in effect amounted to a finding that a sum sufficient to provide that income would constitute a fair and equitable division of property between defendant in error and her husband at the time of their separation. The contention is stated by counsel for plaintiffs in error as follows: "We submit that all that was necessary for the Trial Court to do and all that it should have done in order to comply with the Mandate of this Court in Cause No. 16003 was to convert a $450 monthly income to its present money value and then to enter judgment for that amount. As above stated, and as a mere matter of mathematics, this would require a money judgment in the neighborhood of $150,000."

It is apparent from the whole record in the controversy before us that the trial court, in entering the judgment in cause No. 16003, did not attempt to make a fair and equitable division of property as of the date of the sepa-

ration of defendant in error and her husband. It also is clear that the first judgment was not rendered in contemplation of the right of defendant in error to receive outright that portion of the property which would amount to a fair and equitable division of assets. Upon the contrary it affirmatively appears that the trial court then based its judgment upon an appraisal of the needs of the wife. In answer to the contention here made, in entering the judgment now before us, the trial court said: "It will be noted that if the Supreme Court had wished such a judgment entered, based on the finding of the court as to the Trust, it would have directed this court to so enter it; but it sent it back with instructions to enter a money judgment *not based alone on the needs of plaintiff but based on a fair and equitable division of the property.*" (Italics supplied.)

This indicates clearly that the trial court had not at any time prior to the entry of the judgment now under review, undertaken a property division consistent with the law of Kansas which requires a fair and equitable apportionment thereof. Accordingly the trial court committed no error in refusing to be limited in the division of property to a sum which might produce an income of $450.00 per month.

Second: *Was there sufficient evidence before the trial court to warrant the finding that on the date of the separation of defendant in error and her husband the latter was worth at least $3,800,000.00, all of which had been acquired during their married life?*

■ This question is answered in the affirmative. The record discloses the fact that the husband of defendant in error on February 7, 1944, the date of the separation, was the owner of 80 per cent of the common stock of the Dickey Oil Company. In the first trial of this cause, the record of which is incorporated herein, it was shown that in October, 1944, the Stanolind Company purchased the Dickey Oil Company. The accountant called by counsel for plaintiffs in error testified that upon the sale

of the stock in the Dickey Oil Company, "Mr. Dickey's share of the sale price of the common stock was $4,888,-000.00." The record further discloses that the financial statement of the Dickey Oil Company covering the five-month period beginning July 1, 1943, and ending November 30, 1943, showed a net profit of $337,531.18. Counsel for plaintiffs in error argued in the former case that such a profit for a five-month period would be at the rate of $810,000.00 per annum. They there contended, in connection with another phase of the case that, "Simple mathematics show that it would require a valuation of $13,500,00 to produce $810,000 profit annually at a 6% interest rate; $8,100,000 at a 10% interest rate; and $6,750,000 at a 12% interest rate." Counsel for plaintiffs in error then argued that, "The use of capitalization of profits as an aid in the determination of the value of corporate stock is no mere novel theory which we are advancing."

The husband of defendant in error owned other property in addition to the stock in the Dickey Oil Company. While it is true that plaintiffs in error were presenting this evidence of value and argument thereon for a different purpose, the fact remains that the evidence stands in the record and tends to establish that at the time of the separation, the total worth of the husband of defendant in error was a sum in excess of the $3,800,000.00, which the trial court found to be the minimum conservative value of the property which was subject to division between the husband and wife. While we might lengthen this opinion by references to other parts of the testimony relating to values of property held by the husband, the foregoing is sufficient to show that the finding of the trial court is fully supported by the evidence.

Third: *Did the trial court abuse its discretion in dividing the property equally between defendant in error and her husband?*

■ This question is answered in the negative. It is

agreed that the law of Kansas is applicable to the matters of substance involved in this action. In *Harris v. Harris,* 169 Kan. 339, 219 P. (2d) 454, decided just a few months ago, it was said: "The rule in this jurisdiction has always been that a division of property made by the trial court in a divorce case will not be disturbed on appellate review unless it is clearly made to appear its action in making that division amounted to abuse of discretion."

We cannot say that, by the entry of a judgment awarding the wife a sum equal to one half of the amount which the trial court found to be the value of property acquired during the course of a marriage which lasted for twenty years, any abuse of discretion is "clearly made to appear."

The judgment is accordingly affirmed.

Mr. Justice Jackson and Mr. Justice Alter, who dissented from the opinion of the court in cause No. 16003, do not, by concurring herein, indicate any modification of their dissent from the court's opinion in said cause. However, accepting the former opinion as the law of the case to which their dissent is already noted, they concur herein.

Mr. Justice Stone and Mr. Justice Holland not participating.

On Petition for Rehearing.

By Mr. Justice Moore.

We deem it advisable in disposing of the petition for rehearing, filed by plaintiffs in error, to briefly discuss the points which it is contended the court has overlooked and misapprehended through the rather extended course of this litigation.

Plaintiffs in error summarize the points upon which they rely, under seven separate headings which are, in substance, as follows:

Point 1. *"The 'equitable' judgment of the Trial Court totally disinherits the children of Mr. Dickey—the only completely innocent persons involved in this entire case —and awards their entire birthright to a woman who deserted their home to run away with a hired hand!"*

■ This specification relates to asserted consequences of the judgment which was affirmed by our opinion in this cause. From a reading of the petition, one might be led to conclude that the judgment would pauperize the children of the deceased, George P. Dickey. Even if in fact our opinion had that effect it would be insufficient ground to warrant a reversal of the judgment. Since the point is nevertheless urged with great fervor, we clarify the record with regard thereto as follows:

The evidence discloses that the children of the deceased were made beneficiaries in separate trusts of $250,000.00 each. Upon the entry of the decree of divorce, each of these separate trusts was increased by approximately $83,000.00. The record discloses that on the date of trial the trust of the youngest child had grown to $400,000.00. These trusts are tax free, inheritance tax free, and federal estate tax free. In arguing that payment of the judgment would exhaust the assets of this estate and prevent the children from receiving distribution of any substantial sum, counsel have completely overlooked the fact that payment of the judgment would result in a recovery of approximately $750,000.00 from the federal government as refund upon inheritance taxes. In addition, they have failed to take into account any recoveries that may be had concerning existing claims for refunds, in the amount of $600,000.00.

The eldest child, Betty Ann Cress, was a married woman when the trust under which she is a beneficiary was set up in December, 1941. She was a child of the deceased by a former marriage and the record discloses that she must have been at least twenty-one years of age when Mr. and Mrs. Dickey were divorced.

George P. Dickey, Jr. is now at least twenty-four

years of age and at the time of the entry of the divorce decree, both Mr. and Mrs. Dickey asked that no order of custody be made as to him.

Diana Dickey was born in 1939 and was five years old at the time of the granting of the divorce. The husband, now deceased, was willing that his wife have the custody of this child most of the time.

George P. Dickey, Jr. and Diana Dickey are son and daughter respectively of defendant in error, and there is no reason to suppose, nor is there any suggestion, that she would disinherit them.

Point 2. *"This same 'just and equitable division of property' awards to that woman a fortune, which is more than twice as much as she would have received if she had been a faithful wife and had lived with Mr. Dickey until his death, and had claimed her statutory share!"*

■ Under the law of the State of Kansas, Mrs. Dickey was the owner of a joint interest in all property acquired by her husband following their marriage, except such as might become his separate property by gift, devise, etc. This undivided joint interest became subject to division, and in the consummation of said division of property, the law of Kansas requires the husband to exercise the utmost good faith and to make full disclosure of all material facts, including his circumstances, and any other fact which might affect the terms of the contract. The assets subject to division are those in existence as of the date of the divorce decree, which is the testing date. The assets remaining in the estate of the husband six years thereafter have little to do with the determination of the validity of the judgment under review.

Upon the date of the divorce decree the husband had no right to make a disproportionate and grossly inadequate division of property. In this action the damage of the wife is the difference between what she received under the disproportionate division, and what she should have received under the fair and equitable division re-

quired by the law of the State of Kansas. Inheritance does not enter into the matter at any point.

Point 3. *"The case that led to this result was an action for damages alleging actual, intentional fraud. The Trial Court expressly found that there was no actual, express or intentional fraud. It found instead what it regarded as a disproportionate division of property, and mistakenly called it 'extrinsic' fraud. On this misconception is based an award that takes the entire inheritance from the children and gives it away to their father's divorced wife, an admitted spendthrift."*

 Express fraud is alleged in the complaint; but the evidence showed constructive fraud. From the opening statement of counsel for defendant in error, and throughout the trial, it was apparent that the cause was being presented upon the theory of constructive fraud. This was without objection by plaintiffs in error, and under Rule 15(b), Rules of Civil Procedure, the judgment entered upon the issues actually tried was good.

The Kansas Supreme Court in the case of *City of Clay Center v. Myers*, 52 Kan. 363, 35 Pac. 25, quoting from "Black, Law Dict. §517," defines constructive fraud as follows: "Constructive fraud consists in any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence." The concealment by the husband, intentional or otherwise, of his true worth, prevented a submission to the divorce court of the question of his financial status. Evidence offered on behalf of Mrs. Dickey tended to establish the fact that at the time of the divorce settlement she was unaware of the true financial worth of her husband. In the Kansas divorce action the question of that worth was not in dispute. No pleading raised any issue with regard thereto.

Point 4. *It is argued that the trial court failed to recognize that it was trying a damage suit, and actually sat*

as a divorce court, and that if the court had recognized the true nature of the action it would not, "have confused 'extrinsic' fraud with what it felt to have been simply unfairness. Applying proper principles and finding as it did that there was no actual fraud it would have found that no cause of action for damages for fraud had been proved. Further, finding no true extrinsic fraud, it would have recognized that it had no power to reopen the previous judgment of the Kansas court."

The trial court recognized that it was trying a damage suit, but it mistakenly tried to do what it thought best for a spendthrift. For example, in trying an accounting action between partners, and finding one party entitled to judgment, a trial court would be without power to set up the judgment in trust because it believed the winning party a drunkard and wastrel who should be protected.

When the trial court entered the judgment now under review, it stated, inter alia: "It will be noted that if the Supreme Court had wished such a judgment entered, based on the finding of the court as to the Trust, it would have directed this court to so enter it; but it sent it back with instructions to enter a money judgment not based alone on the needs of plaintiff but based on a fair and equitable division of the property." This language indicates that the court, in entering the judgment, was following the mandate of this court relating to the applicable measure of damages, and further indicates that in its first judgment, the proper measure of damages was not applied.

The trial court was not "reopening" the Kansas judgment. There was no intrinsic fraud in that judgment. The fraud was in the contract, which was not an issue as to fairness or fraud, and was no part of the judgment. A reopening means, of course, that there is a judgment to reopen, and there was no judgment here merging the contract.

Point 5. *"Had the trial court not misapprehended its*

*position, it would not by its judgment have encouraged
and participated in the flagrant violation by plaintiff of
the injunction of the court of a sister state, nor would it
have denied full faith and credit to the considered
opinion of the Kansas court."*

██ ·Since the contract was not made a part of the
decree, the Kansas court had neither jurisdiction nor
power to attempt to control the future action of the
parties with regard thereto. The injunction was mean-
ingless. Actually the injunction ran to property *"as es-
tablished by the property settlement of the parties."*
(Italics supplied) If for any reason the property right
thus established is voided, there remains nothing upon
which the injunction can operate. The decision of the
Kansas court could not be a "considered" one if there
was no "issue" presented to it to "consider."

Point 6. *"Had the Trial Court recognized the case as
a damage suit rather than as an action for 'division of
property', it would not have entered a judgment on the
second hearing which had the capricious result of in-
creasing by more than ten times the amount of its origi-
nal judgment—without a shred of additional evidence to
justify an increased award."*

The trial court simply did, under our direction in the
original opinion, what it should have done in the begin-
ning, namely, arrive at an equitable division of property
and enter judgment thereon. It needed no additional
evidence to sustain the finding as to the worth of Mr.
Dickey on the date of the divorce decree.

Point 7. *"Finally, this Court's entire opinion with ref-
erence to its refusal to give full faith and credit to the
Kansas decree was based on the assumption that there
was no Kansas law declaring when a property settle-
ment contract was merged in the decree approving it.
Since that opinion, a case has been reported in which
the Kansas Supreme Court declares its law on that sub-
ject. This recent case totally disposes of Plaintiff's argu-
ment that no merger resulted in the Dickey decree."*

This presents the case of *Feldmann v. Feldmann*, 166 Kan. 699, 204 P. (2d) 742, which is considered in the petition for rehearing at length, beginning at page 33. Plaintiffs in error misconceive the law as announced in the Feldmann case in the following particulars:

(1) The sole issue there was whether a divorce court can do anything else than award alimony. No issue of fraud was presented in the attempt to reopen the decree. The court held that, "There is a distinct difference between what the court has authority to do under the statute with respect to alimony in a divorce case and what the parties may agree upon." The case of *Hyde v. Hyde*, 143 Kan. 660, 56 P. (2d) 437, and that of *Petty v. Petty*, 147 Kan. 342, 76 P. (2d) 850, are cited by the court as supporting the proposition that where a contract has been freely and fairly made, it *may* be made a part of the judgment in a divorce action. We have cited both these cases (120 Colo., pp. 327, 328). It is held in the Petty case that the court has no right to refuse to approve a contract fairly made. It is disclosed in the Hyde case that a contract providing for property settlement, child support, and alimony was "approved by the court." Nevertheless this contract was held to be a proper basis for an independent action for specific performance thereof, notwithstanding it had theretofore been approved by the court in the divorce action.

(2) The Feldmann case (which by the way was decided in April, 1949, before, not after, as the petition implies, the decision in the Dickey case) does no more than reaffirm the proposition that the contract "may" be made a part of the decree. It is not even mentioned in the second Petty case, 207 P. (2d) 428, which reviews the merger authorities. In the Feldmann case the contract was made a part of the decree, as shown by this language in 204 P. (2d) at page 745: "Appellee was then permitted to adduce her evidence. At its conclusion the trial court rendered the judgment from which this appeal springs granting appellee a divorce, giving

her the custody of the children, confirming and approving the original and supplemental property settlement agreements, *and making such agreements a part and portion of its final judgment and decree."* (Italics supplied) In other words, the contracts were merged into the judgment and decree and lost their independent identity. In the Dickey case, the court likewise "approved" the settlement contract, *but it did not make it "a part and portion of its final judgment and decree."* (Italics supplied)

(3) Those portions of the Feldmann case reiterating the rule that not only all matters presented in a case are res judicata, but also all issues which might have been presented, have no application here. That rule, of course, relates to matters known to a litigating party and which he has opportunity to present. In the Dickey case, the present issue was unknown to Mrs. Dickey and could not possibly have been litigated.

We are not impressed with the argument advanced, that it must have been defendant in error who insisted upon inserting the provision in the divorce decree which purported to enjoin the parties from claiming or asserting any right, title or interest in and to the property of the other after the date of the decree of divorce. C. L. Carlock, a witness called by defendant in error, testified that shortly after the divorce was obtained Dickey stated to him that, "He had made the biggest deal he had made in his life." The witness continued, "I asked him how, and he said he had got a divorce cheap."

The statement in the petition for rehearing, to the effect that the Feldmann case is a new declaration of law by the Kansas court affecting the Dickey case, is without basis. In fact, nothing new is announced in the Feldmann case, and therefore it could not justify another hearing upon matters fully considered in the opinion of this court on the original case.

In addition to the seven points above considered, the petition for rehearing contains the following: "Who gets

this judgment? Mrs. Ruby Dickey Bartges. Who is she? To quote the trial judge who awarded her this fortune at the expense of her children, she is a woman: (1) infatuated with a younger man, an employee of her husband; (2) whose 'misconduct' the Court 'cannot condone' and which 'is to be censored in positive terms'; (3) who 'is improvident and should not be entrusted with the handling of any large sum of money'; (4) who, while still married to Mr. Dickey 'undoubtedly had made an ill-advised trip with him (Mr. Bartges) to Colorado which might have resulted in a criminal prosecution!"

The matter of handling the affairs of wholly untrustworthy people possessed of money is vested exclusively in the county court. Mrs. Dickey has not been declared incompetent.

The petitioners neglect to mention several other important findings of the trial court, namely, "(a) That to all intents and purposes Mrs. Dickey must have been a true and faithful wife up until a period shortly before the institution of the divorce action. * * * (c) That in later years George P. Dickey was an excessive drinker and abusive in his conduct toward his wife."

It is not mentioned in the petition that plaintiffs in error kept Mrs. Dickey from testifying because of the "dead-man" statute, although they properly could have consented if they were interested in exploring the matters involved in this connection. *Faden v. Estate of Midcap*, 112 Colo. 573, 152 P. (2d) 682. This would have given her an opportunity to tell her story as to inhumane treatment by her husband, the nature and extent of which is indicated in the testimony of Mr. Foulston, that is, as to Dickey's "alleged misconduct with other women; some thirteen abortions which Mrs. Dickey was claiming had been performed because of his insistence; some physical beating up that had occurred immediately prior to the filing of the petition." The divorce was granted for the misconduct of the husband and not that of the wife.

Finally, the following question is posed in the petition for rehearing: "Would not the decision in this case furnish an incentive to any calculating wife to divorce her husband at a time of great wealth, with the plan that later, after his death, she may claim an 'equitable' redivision of his former worth—thus realizing wealth far greater than her statutory share had she remained his wife and become his widow?"

This action was instituted during the lifetime of Mr. Dickey. He died February 20, 1946, while the suit had been instituted on September 18, 1945. This fact disposes of the "poor children" angle, for Dickey could not have relied on them had he lived and defended in person.

The petition for rehearing is denied.

MR. JUSTICE JACKSON and MR. JUSTICE ALTER dissent.

MR. JUSTICE STONE and MR. JUSTICE HOLLAND not participating.