Joe GRENIER, Appellant,

v.

James W. HARLEY, Special Administrator with General Powers of the Estate of Dan L. Harley, deceased, Appellee.

No. 15459.

United States Court of Appeals Ninth Circuit.

Dec. 10, 1957.

George Boshae, Los Angeles, Cal., for appellant.

Lyndol L. Young, H. Elliott Pownall, Jr., Los Angeles, Cal., for appellee.

Before ORR, LEMMON, and CHAMBERS, Circuit Judges.

LEMMON, Circuit Judge.

Sustaining the judgment of the Court below in the instant case, there is more than the proverbial "scintilla of evidence," or, in the even more ancient idiom of the common law, more than "the shadow of a shade".

The testimony supporting the District Court's finding that the appellant obtained the execution of the deed in controversy "through undue influence and constructive fraud" is sufficient to dispel any suspicion that, in the language of the Gypsum case, infra, "a mistake has been committed".

**1.** *Statement of the Case*

The appellant's brief contains no adequate statement of the case, as required by our Rule 18(2) (c), 28 U.S.C.A. Although his brief carries the opening caption, "Statement of Case", it contains only one sentence that deserves that designation; namely, that the action was commenced by the appellee, to cancel a deed executed by the decedent, Dan L. Harley, conveying real property in Montana to the appellant. The rest of the so-

called "Statement" sets forth jurisdictional facts and then argumentatively summarizes a small portion of the evidence. Nowhere does the "Statement of Case" narrate the following proceedings below:

The case was tried to the Court without a jury. The District Court made Findings of Fact and Conclusions of Law, and gave judgment ordering the appellant to "execute and acknowledge" a grant deed conveying the real property in question to the Estate of Dan L. Harley. The Court also ordered the appellant to pay the appellee the sum of $2,-931.07, representing the net amount of rents collected by the appellant from the property in suit, including interest thereon.

From that judgment the present appeal was taken.

### 2. The Findings of Fact

Neither party has submitted "a clear statement of * * * facts to be discussed", as required by our Rule 18(2)(e). The appellant has quoted, largely verbatim, some of the testimony, with no attempt at either a logical or chronological arrangement. The appellee has subdivided the testimony into that of "(A) Montana Friends of Appellant" and "(B) Appellant's Other Witnesses", with no attempt whatever to classify or arrange the testimony of his *own witnesses*, parts of which are scattered throughout the brief.

Accordingly, we will summarize the District Court's orderly Findings of Fact, and will then assess the parties' arguments thereon.

Dan L. Harley, hereinafter Harley, died on July 30, 1955, at the age of 77 years. For several months prior to his death he was critically ill and bed-ridden, and suffered from heart trouble, chronic chest difficulties, arteriosclerosis, general physical debility, exhaustion, and fatigue.

For several months prior to Harley's death, the appellant acted as business agent and attorney in fact for the decedent, and in such capacity attended to the latter's financial and business affairs.

On May 16, 1955, and for a long time prior thereto and thereafter until Harley died, the appellant bore a confidential relationship toward the decedent, who reposed trust and confidence in the appellant. During all of that time the appellant had knowledge of and accepted the trust and confidence of the decedent, and acted thereon.

On May 16, 1955, the appellant caused a grant deed to be prepared under his supervision and directions by a public stenographer. The deed conveyed from the decedent to the appellant certain real property in the city of Deer Lodge, Montana.

No consideration passed from the appellant to Harley for the execution of that deed, which execution was obtained by the appellant from the decedent "through undue influence and constructive fraud practiced by [the appellant] on the decedent". The latter was not incompetent at the time he executed the deed; namely, May 16, 1955.

It was not the intention of the decedent in executing and delivering the deed to the appellant, to make a gift of the real property to the appellant. It was Harley's intention to vest the title to the property in the appellant *only as trustee for the decedent*.

The appellant has collected rents from the property involved herein since June 1, 1955, in the sum of $235 per month for each month subsequent to June 1, 1955, to and including November 1, 1956, or a total of $4,230.

The appellant has expended for necessary repairs and maintenance of the real property, and for insurance and taxes, since June 1, 1955, the sum of $1,498.93.

The appellant holds the title to the real property in question as trustee for the Estate of Dan L. Harley, deceased.

### 3. The Specification of Errors

In summary, the appellant specifies as error that the District Court found that:

1. The appellant obtained the execution of the deed by the decedent through undue influence and constructive fraud.

2. It was not the intention of the decedent to make a gift of the property described in the deed, but to vest the title to the realty in the appellant only as trustee for the decedent.

3. The appellant holds the title to the property as trustee for the estate of Harley.

4. The appellee is entitled to judgment against the appellant awarding the total sum of $2,931.07, and ordering the appellant to execute a grant deed conveying the property to the estate of Harley.

4. *The Federal Rules of Civil Procedure, and Not State Decisions, Govern the Weight To Be Given to the Findings of the District Court.*

■ In his opening brief, the appellant refers to not a single decision by a Federal Court, but relies upon certain cases decided by state courts of California dealing with the weight that an appellate court should give to the findings made by the trier of fact.

California decisions, however, are not controlling on that point. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., alone is applicable:

" * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * * "

As it happens, however, California jurisprudence is in accord with the Federal rule. No useful purpose would be served by a citation of cases to this effect.

5. *The Appellant Does Not Deny That He "Bore a Confidential Relationship" Toward Harley, or That the Latter "Reposed Trust and Confidence" in Him.*

As we have seen, there was a confidential relationship between Harley and the appellant. That relationship is fully set forth in Finding No. 2, the only sentence of which objected to by the appellant is "That the defendant obtained the execution of said deed by the decedent through undue influence and constructive fraud practiced by [the appellant] on the decedent".

■ The part of Finding No. 2 dealing with the relationship between Harley and the appellant is as follows:

"That defendant for a period of several months prior to the death of said decedent acted as a business agent and attorney in fact for said decedent, and in such capacity attended to the financial and business affairs of said decedent. That said defendant on May 16, 1955, bore a confidential relationship toward said decedent and said decedent on said date * * * , and for a long time prior thereto and thereafter until he died, reposed trust and confidence in defendant; and during all of that time defendant had knowledge of and accepted the trust and confidence of the decedent, and acted thereon."

The above finding describes a classical relation of trustee and beneficiary under California law. Nor does the appellant deny that a close personal and business relationship existed between the decedent and himself. On the contrary, the appellant states at the very outset of his brief:

"The defendant, Joe Grenier, was a very intimate friend of the deceased, Dan L. Harley, for approximately 50 years * * * , during which time the defendant and decedent * * * had numerous harmonious business dealings and visits with each other. Although the defendant was a citizen of and lived in Deer Lodge, Montana * * * , *whenever the decedent needed comfort or wished to discuss business affairs with some one, decedent always called upon the defendant.*" [Emphasis supplied.]

The appellant's testimony was to the same effect. He stated that he came to

know Harley "very intimately"; that "we did business together in different ways"; that they lent each other money; that up to the time that Harley left Montana, the appellant saw him "practically every day".

"I worked for him for three years after I came back in 1925. That is, he was by immediate boss, and we were both working for the power company. * * * We lived together, our families did, and we were very intimate."

■ 6. *There Is Substantial Evidence That Harley Deeded the Montana Property to the Appellant to Keep It From Being Involved in Certain Litigation.*

Joseph H. Edgar, an attorney who assisted Harley in making a will, testified that on July 16, 1955, two weeks before Harley died, he had a conversation with the appellant at Harley's home, in the presence and within the hearing of the decedent, regarding Harley's reason for deeding the Deer Lodge tract to the appellant.

Edgar's testimony on this point is as follows:

"Then I said to Mr. Grenier, I said, 'I understand that Dan [the decedent] has also deeded the Montana property to you.'

"He said, 'That's right.'

"I said, 'What is back of that? Does he intend to avoid the Tessie Harley will contest by doing that?'

"He said, 'That is right.' "

It should be explained that Tessie Harley was Harley's deceased wife.

That a desire for certain secrecy underlay the appellant's acquisition of the deed is evident from his own testimony:

"* * * [Harley said] that he was dissatisfied with the will, and Joe Edgar wanted to hold off making a new will until after this trial of Benifer come up, so he was going to deed me the property, *so there would be no questions asked, that there would be nothing—well, any*

*questions regarding that particular piece of property, or words to that effect."*

It should be explained "this trial of Benifer" evidently referred to a suit filed on or about April 1, 1955, by Mrs. Catherine Benifer and Mrs. Agnes Kelley, sisters of Harley's deceased wife, to declare Harley "incompetent". The suit was filed by Mrs. Benifer and Mrs. Kelley on or about April 1, 1955. Harley was declared competent.

Counsel for the appellant did not contend that Edgar had perjured himself, and he conceded that Edgar had not testified "by mistake". Upon what other grounds can his testimony be assailed?

■ After hearing all the testimony, and observing the manner of the witnesses while they were on the stand, the District Judge said:

"I find that the decedent was competent, that he had good eyesight, he knew what he was doing. I find that he gave this property in trust, through a constructive trust to the [appellant] * * * the decedent by his silence and the defendant by his positive assertion declared [this] to be the purpose of the trust; not a gift, but to hold it to avoid involving it in some litigation. * * *

"* * * it is clear to me from the evidence that during Dan Harley's lifetime Joe Grenier himself considered that he held this property in trust, and he will be charged as a constructive trustee by reason of the presumption which arises from his fiduciary relationship, which the court finds has not been overcome by any of the evidence."

We cannot say that there is no rational basis for the District Court's interpretation of all the evidence. We are not disposed to disturb that interpretation.

■ However rigid and formal may have been the creation of voluntary trusts under the common law, in California a trust may come into existence quite informally. Following are the

pertinent provisions of the Civil Code (West's Annotated California Codes, 1954 edition):

"§ 2219.  *Trustee defined*

"What Constitutes One A Trustee. *Every one who voluntarily assumes a relation of personal confidence with another is deemed a trustee,* within the meaning of this Chapter, not only as to the person who reposes such confidence, but also as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control."

"§ 2228.  *Good faith*

"Trustee's Obligation To Good Faith.  In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind."

"§ 2229.  *Use of property*

"Trustee Not To Use Property For His Own Profit.  A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner."

"§ 2231.  *Influence to obtain advantage from beneficiary*

"Trustee's Influence Not To Be Used For His Advantage.  A trustee may not use the influence which his position gives him to obtain any advantage from his beneficiary."

"§ 2235.  *Transactions between trustee and beneficiary;  presumption*

"Presumption Against Trustees. All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, *are presumed to be entered into by the latter* without sufficient consideration, *and under undue influence.*" [Emphasis supplied.]

The above provisions of the Civil Code of California read squarely upon the relationship and the dealings between Harley and the appellant.

■■■  In Re Estate of Arbuckle, 1950, 98 Cal.App.2d 562, 568–569, 220 P.2d 950, 954, 23 A.L.R.2d 372, hearing by the State Supreme Court denied, the Court said:

"In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, resulting in damage to another.  [Cases cited.]  Constructive fraud exists in cases in which conduct, *although not actually fraudulent,* ought to be so treated, —that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud. [Many cases cited.]

"Constructive fraud usually arises from a breach of duty *where a relation of trust and confidence exists.* [Case cited.]  A confidential relation may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.  [Cases cited.]  *  *  *

" 'A violation of duty on the part of a trustee is treated as a fraud upon the beneficiary  *  *  *.' " [Emphasis supplied.]

See also, on the high standard of good faith exacted of a trustee, the magnificent statement by Mr. Justice Cardozo in Meinhard v. Salmon, 1928, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1, 5.

### 7.  *Conclusion*

The appellant quotes at considerable length from United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394–395, 68 S.Ct. 525, 542, 92 L.Ed.

746, which contains the following gloss on the words "clearly erroneous", as used in Rule 52(a), supra:

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

A careful study of the record, read in the light of the applicable California statutes, has left us with no such conviction.

Accordingly, the judgment is affirmed.