569 P.2d 875 (1977)
SECURITY NATIONAL BANK as Executor of the Estate of George W. Brower, Deceased, (by substitution), Mrs. Mary I. White, Mrs. Helen Bingham Salzer as Trustee under the Last Will and Testament of Addie Ludlow Bingham, Deceased, Robert E. Stewardson and Rosemary Stewardson, and Dr. Earl A. Engle, Individually, and as preferred shareholders of Peters, Writer, and Christensen, Inc., Plaintiffs-Appellants,
v.
PETERS, WRITER AND CHRISTENSEN, INC., a Colorado Corporation, George S. Writer, John F. Coughenour, Jr., and Allan R. Hickerson, Jr., Defendants and Third-Party Plaintiffs-Appellees,
v.
Thomas P. OWEN, Third-Party Defendant.
No. 75-810.
Colorado Court of Appeals, Div. III.
May 26, 1977.
Rehearing Denied June 30, 1977.
Certiorari Denied September 12, 1977.
*877 Gorsuch, Kirgis, Campbell, Walker & Grover, C. E. Eckerman, Kerry R. Brittain, Denver, for plaintiffs-appellants.
Roath & Brega, P.C., Jay W. Enyart, Denver, for defendants and third-party plaintiffs-appellees.
Clanahan, Tanner, Downing & Knowlton, Thomas C. McKee, Denver, for third-party defendant.
BERMAN, Judge.
Plaintiffs, preferred shareholders of Peters, Writer and Christensen, Inc., (PWC) instituted this action on October 16, 1972, asserting two claims for relief against the directors of PWC. The first was a derivative claim under C.R.C.P. 23.1 for certain violations of the Colorado Corporation Code, and the second was a class action claim alleging fraud and breach of fiduciary duty. The defendants joined Thomas P. Owen as a third-party defendant on an indemnification theory. At the conclusion of a nonjury trial, the court held that plaintiffs' claims for relief were both based upon theories of fraud, and that the evidence presented would not sustain such a finding. Accordingly, a judgment of dismissal was entered in favor of defendants and the third-party defendant. The plaintiffs appeal from the judgment in favor of defendants, but no appeal was taken against the third-party defendant. We reverse.
PWC is a Colorado corporation and the individual defendants were directors and officers of PWC, each of whom held 16,000 of the 96,000 common Class A shares of PWC outstanding. The only voting shares of PWC were the common Class A shares.
In August 1963, a meeting of the directors and common shareholders of the company was held, at which time a plan was approved to sell the principal part of the business, its assets and property, and to liquidate and dissolve the company completely. Though the articles of incorporation required that the preferred shares be redeemed upon dissolution of the company, the preferred shareholders were not notified of the above meeting and were neither given an opportunity to vote at the meeting, nor an opportunity to file written objections or demands for the payment of the fair value of their shares as required by C.R.S.1963, 31-5-13 (now § 7-5-113, C.R.S. 1973). Several of the defendants testified that they did not give the preferred shareholders notice of the above meeting on advice of counsel. Notice was not deemed necessary since the directors had adopted a plan to redeem the preferred shares within 12 months; however, notice of the planned redemption was never given to the preferred shareholders and the plan was never carried out. On the basis of these facts, the trial court held that the directors had violated both the articles of incorporation and C.R.S.1963, 31-5-13.
In conformity with the dissolution plan, PWC sold substantially all of its assets, retaining only the common and preferred shares it held in the Atlantic Improvement *878 Corporation. The Atlantic stock was initially restricted and could not be sold by PWC, but in March 1965, PWC received a "no action" letter from the SEC and thereafter the Atlantic stock could have been registered and sold. Until 1971, the value of the Atlantic stock was such that all preferred shares of PWC could have been fully redeemed; however, such a sale would not have generated sufficient monies to pay the common shareholders fully.
Several of the defendants testified that they did not sell the Atlantic stock because substantially all of the assets of Atlantic, which consisted of realty, had been condemned by the City of New York, and that it was their belief that the court award in the Atlantic condemnation suit would enable PWC to receive substantially more than the market value of its Atlantic shareholdings.
In 1964 and 1965, PWC did not pay five consecutive quarterly dividends to its preferred shareholders. The defendants testified that this action was taken on the advice of counsel for the purpose of preserving cash for the settlement of claims against the company. After failing to pay the above five dividends, the defendants were informed by the company bookkeeper that the preferred shareholders, pursuant to their stock subscription agreement, were entitled to assume control of the company if six dividends were missed. In an "Estimate of Potential Liquidation Value," prepared by the bookkeeper, he wrote the defendants: "NOTHING HAS BEEN DONE. THE PREFERRED STOCKHOLDERS GET THE COMPANY 6/1/65 UNLESS SOMETHING IS DONE." Thereafter, defendants resumed paying dividends to the preferred shareholders, thereby preventing takeover of the company by the preferred shareholders.
At trial, plaintiffs asserted that these dividend payments were made while the capital of PWC was impaired in violation of C.R.S.1963, 31-5-10 (now § 7-5-110, C.R.S. 1973), but the trial court failed to rule on this matter, as will be discussed more fully below.
It is also relevant to note that in 1965, 1967, and 1970, PWC purchased shares of its preferred stock from three shareholders.

I.
Plaintiffs first allege that the court erred in dismissing their first claim for relief, the derivative claim brought to enforce the rights of PWC against the defendant officers and directors. It was based upon three allegations: (1) That the directors caused the company to purchase treasury shares while the capital of the company was impaired, in violation of C.R.S.1963, 31-2-2 (now § 7-3-102, C.R.S.1973); (2) that the directors caused the company to loan another officer certain monies in violation of C.R.S.1963, 31-5-14(4) (now § 7-5-114(4), C.R.S.1973); and (3) that the directors caused the company to pay dividends out of capital while the company's stated capital was impaired, in violation of C.R.S.1963, 31-5-10 (now § 7-5-110, C.R.S.1973). It was asserted that the directors were personally liable to the corporation for the above three violations, pursuant to C.R.S. 1963, 31-5-14 (now § 7-5-114, C.R.S.1973). Further, as to each of the above claims, it was alleged that "[t]he matters complained of . . . were fraudulently done by the defendant officers and directors in their own interest and in violation of their fiduciary duty to the Defendant Corporation and its shareholders . . . . Therefore, the three-year State of Limitations provided by Colo.Rev.Stats.1963, § 87-1-10 [now § 13-80-109, C.R.S.1973] did not begin to run until the time of the discovery of the matters complained of . . . ."
At the conclusion of plaintiffs' case, the defendants moved to dismiss, at which time the court granted the motion as to plaintiffs' claim premised upon the alleged improper loan to a corporate officer. Thereafter, at the close of all the evidence, the court dismissed the remainder of the derivative claim, holding that the various allegations had been pled and tried on a theory of fraud, and that fraud had not been proved.
It is not clear from the trial court's holding whether it determined that fraud was *879 required to impose liability under the statutes, or whether fraud was the only issue pled and tried, thus precluding a ruling on the alleged statutory violations. In either event, the court erred.
Plaintiffs' complaint sets forth specific sections of the Colorado Corporation Code which were allegedly violated, and specific sections of the Code granting relief therefrom. The additional paragraphs referring to fraud were obviously for the purpose of avoiding the application of C.R.S.1963, 87-1-10 (now § 13-80-109, C.R.S.1973), which statute of limitations allegedly could otherwise have been invoked as a bar to some of the claims premised on statutory violations. Moreover, the evidence at trial was, in part, clearly directed to whether the capital of the company was impaired at the time dividends were paid or the treasury stock purchased, which evidence related solely to whether statutory violations occurred. Accordingly, the case was not tried solely on the basis of fraud.
And, a showing of fraud is not required to impose liability under the statutes allegedly violated. McGill's Administratrix v. Phillips, 243 Ky. 768, 49 S.W.2d 1025 (Ct.App.1932); see Aiken v. Insull, 122 F.2d 746 (7th Cir. 1941), cert. denied, 315 U.S. 806, 62 S.Ct. 638, 86 L.Ed. 1205. The statutes in question expressly make directors personally liable to the corporation, see Rosebud Corporation v. Boggio, Colo. App., 561 P.2d 367; Sears v. Weissman, 6 Ill.App.3d 827, 286 N.E.2d 777 (1972), for assenting to or voting for the payment of illegal dividends, for the wrongful purchase of treasury shares, or, in certain cases, for making a loan to an officer or director. Further, such liability is absolute save for the statutory defenses set forth in C.R.S. 1963, 31-5-14(6) (now § 7-5-114(6), C.R.S. 1973). See Southern California Home Builders v. Young, 45 Cal.App. 679, 188 P. 586 (1920); Quintal v. Greenstein, 142 Misc. 854, 256 N.Y.S. 462, aff'd without opinion, 236 App.Div. 719, 257 N.Y.S. 1034 (1932); see generally 3A W. Fletcher, Cyclopedia of Corporations § 1197; 19 C.J.S. Corporations § 876. Accordingly, the court erred in dismissing plaintiffs' two claims for relief premised on the purchase of treasury shares and on the payment of dividends out of capital and a new trial is required as to those claims.
However, defendants argue that dismissal of plaintiffs' first and third claims was proper because both claims were barred by the applicable statute of limitations. It is asserted that the liability imposed upon directors for the payment of improper dividends and the purchase of treasury shares is in the nature of a penalty, and that the one year limitation contained in C.R.S.1963, 87-1-4 (now § 13-80-104, C.R.S.1973), applies as to those claims. Accordingly, they assert that plaintiffs' claims for relief were not timely. We disagree.
Liability for improper payment of dividends and improper purchase of treasury shares is imposed upon directors pursuant to C.R.S.1963, 31-5-14(1) and (2) (now § 7-5-114(1) and (2), C.R.S.1973). Based upon the wording of these sections and the amount of liability imposed upon directors thereunder, it is apparent that the statutes are remedial in nature as to the corporation, merely requiring directors to indemnify the corporation for amounts actually lost. As such, there is no burdensome liability as was imposed under prior statutes, see Credit Men's Adj. Co. v. Vickery, 62 Colo. 214, 161 P. 297 (1916) (statute making directors liable for all debts of the company held as penal in nature). Under the present statutes, damages are based directly upon injuries suffered by the corporation, as opposed to a liquidated measure without regard to injury. Cf. Wood, Walker & Co. v. Evans, 461 F.2d 852 (10th Cir. 1972) (statute imposing liability of 10% of value of stock held as penal in nature). Accordingly, we hold that these statutes in question are not penal in nature, and that the one-year statute of limitations does not apply thereto. See Precision Extrusions, Inc. v. Steward, 36 Ill.App.2d 30, 183 N.E.2d 547 (1962); Aiken v. Insull, supra. See generally 3A W. Fletcher, Cyclopedia of Corporations §§ 1203 through 1209.
*880 Directors are fiduciaries to the corporation and its shareholders, Kullgren v. Navy Gas & Supply Co., 110 Colo. 454, 135 P.2d 1007 (1943), and thus, we hold that the five-year limitation period contained in C.R.S.1963, 87-1-15 (now § 13-80-114, C.R. S.1973), governs the instant case. See Hall v. Swan, 117 Colo. 349, 188 P.2d 437 (1947). That statute provides that actions falling thereunder "shall be filed within five years after the cause thereof shall accrue, and not thereafter." Accordingly, we must determine when a cause of action accrues under the applicable statutes.
Under C.R.S.1963, 31-2-2(4) (now § 7-3-102(4), C.R.S.1973), "No purchase of or payment for its own shares shall be made at a time when the corporation is insolvent or when the purchase or payment would make it insolvent." Hence, a cause of action accrues at the time an improper purchase of treasury shares is made, and any liability imposed on directors for violating this section would therefore attach at the time of the purchase. Thus, under the explicit terms of C.R.S.1963, 87-1-15 (now § 13-80-114, C.R.S.1973), a claim under C.R.S.1963, 31-5-14 (now § 7-15-114, C.R. S.1973), must be commenced within five years of the improper purchase. Similarly, any claim against directors based upon an improper dividend payment would have to be commenced within five years of such payment.
Thus, on the retrial of these claims, if the court determines that improper payments of dividends or improper purchases of treasury shares were made, and that the purchases or payments occurred within five years of the filing of this suit, the defendants must be held liable.
Also, the trial court's dismissal of plaintiffs' claim for relief, based on the alleged illegal loan to a corporate officer, was erroneous. Although the court correctly determined that no "loan" had been made within the meaning of C.R.S.1963, 31-5-14(4) (now § 7-5-114(4), C.R.S.1973),[1] the evidence disclosed that the corporate officer, defendant Coughenour, owed PWC a balance of some $11,500 on the note. This evidence was not disputed, and thus it was error to dismiss this derivative claim of the corporation as regards defendant Coughenour. Teodonno v. Bachman, 158 Colo. 1, 404 P.2d 284 (1965). Accordingly, we remand this claim to the trial court with directions to grant a new trial as to the corporation's right to recover this debt from defendant Coughenour.

II.
Plaintiffs' second claim for relief is a class action claim on behalf of the holders of the preferred stock of the company. The essence of this claim is that defendants breached their fiduciary duty towards plaintiffs and that they are liable to plaintiffs for all losses caused by this breach. Plaintiffs asserted that they were wrongfully denied notice of and an opportunity to vote at the 1963 shareholders meeting wherein the plan of liquidation and dissolution of PWC was approved, which in turn violated their right to file written objections or demands upon the corporation for the payment of the fair value of their shares pursuant to C.R.S.1963, 31-5-13 (now § 7-5-113, C.R.S.1973). It was further alleged that the above act was fraudulently concealed by the directors and that the applicable statute of limitations did not begin to run until discovery of the wrong. As stated previously, the trial court dismissed this action finding that fraud, actual or constructive, had not been proved. We hold that the court erred in finding that constructive fraud had not been proved.
Constructive fraud is defined as "a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, violate confidence, or to injure public interests. *881 . . . Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud." Miller v. First National Bank, 234 N.C. 309, 67 S.E.2d 362 (1951) (citing 37 C.J.S. Fraud § 2). Accord, Grenier v. Harley, 250 F.2d 539 (9th Cir. 1957); In re Estate of Arbuckle, 98 Cal.App.2d 562, 220 P.2d 950 (1950). See Johnson v. Mansfield Hardwood Lumber Co., 159 F.Supp. 104 (W.D.La.1958), aff'd, 263 F.2d 748, cert. denied, 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120; United States National Bank v. Bartges, 122 Colo. 546, 224 P.2d 658 (1950) (applying Kansas law), cert. dismissed, 340 U.S. 957, 71 S.Ct. 575, 95 L.Ed. 689; see also 8A Words and Phrases, 529 (Perm. ed.). Such fraud often arises where a special confidential or fiduciary relationship exists, which affords the power and means of one to take undue advantage over the other. See Grenier v. Harley, supra; In re Estate of Arbuckle, supra. See generally 37 Am.Jur.2d § 15. A breach of fiduciary duty constitutes constructive fraud. In re Estate and Guardianship of Purton, 7 Ariz.App. 526, 441 P.2d 561 (1968). See Grenier v. Harley, supra; Seagrave Corp. v. Mount, 212 F.2d 389 (6th Cir. 1954); Johnson v. Mansfield Hardwood Lumber Co., supra; Miller v. First National Bank, supra. Cf. Ohio Drill & Tool Co. v. Johnson, 498 F.2d 186 (6th Cir. 1974). And as we pointed out previously, the directors of a corporation occupy just such a fiduciary relationship to the corporation and its stockholders. Kullgren v. Navy Gas & Supply Co., supra. Moreover, constructive fraud, like "[a] constructive trust, is . . . [a] remedial device through which preference of self is made subordinate to loyalty to others." Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928).
Here, the record discloses the total lack of communication to the preferred shareholders as to the dissolution of PWC, as to their statutory right to have their shares redeemed, and as to what was generally happening in the corporation. The trial court correctly ruled that "[the directors] vote to liquidate the corporation without making provision for preferred shareholders. . . was in violation of the Articles of Incorporation [of PWC] and of the statute [C.R.S.1963, 31-5-13]."
The decision to dissolve imposed certain duties on the directors, one of which was to redeem the preferred shares. The directors' stated reason for failing to redeem was that to do so would have required the sale of the Atlantic shareholdings. This the directors declined to do since they thought the Atlantic stock would greatly increase in value. However, any increase could only have benefited the common shareholders, for the preferred shareholders were limited by the articles of incorporation to receiving a fixed liquidation preference plus accumulated and unpaid dividends. In effect, the directors gambled with property which should have been used to redeem the preferred shares of PWC, and they did so without informing the preferred shareholders as to their plan. By these actions, the defendants breached the fiduciary duty they owed plaintiffs, and their conduct constitutes constructive fraud as a matter of law. See Johnson v. Mansfield Hardwood Lumber Co., supra.
Further, we note that together the four directors (including the third-party defendant) owned 64,000 shares of the common voting stock. This was a substantial amount when contrasted to the total outstanding of 96,000 voting shares. Thus, in addition to the fiduciary duties they owed as directors, they also owed fiduciary duties to the preferred stockholders because of their dominant and controlling stock ownership. Seagrave Corp. v. Mount, supra. No evidence indicates that they operated other than in unison in making the decisions which caused the plaintiffs' loss. Also, the evidence disclosed that although the preferred shares could have been fully redeemed until 1971 by selling the Atlantic stock held by PWC, at no time would such a sale have generated sufficient monies to pay off the common shareholders fully. Thus, the defendants, who occupied the dual position of controlling stockholders and directors of PWC, cannot be assumed to have exercised "an unprejudiced exercise of *882 judgment . . .," Seagrave Corp. v. Mount, supra, citing United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1916), not just the "poor judgment" the trial court attributed to them.
In dismissing this claim for relief, it appears that the trial court based its decision solely on the fact that no actual fraud had been proved, saying, "I can find no showing of material misrepresentation, concealment of material facts, as appears in other cases involving corporate fraud. There were no fraudulent changes in the books, no misleading statement to shareholders." Such findings, however, go to intent and relate to actual fraud, not constructive fraud. See Snell v. Cornehl, 81 N.M. 248, 466 P.2d 94 (1970); In re Guardianship of Person and Estate of Chandos, 18 Ariz.App. 583, 504 P.2d 524 (1972). And, there is no support in the record for the court's conclusion that constructive fraud had not been proved. Nor does the court's finding that the "directors used poor judgment" relieve them from a charge of constructive fraud any more than does the fact that they may have acted in good faith without intent to deceive. See Kullgren v. Navy Gas & Supply Co., supra; Johnson v. Mansfield Hardwood Lumber Co., supra. Rather, the evidence and facts as found by the court point with clarity to the constructive fraud complained of, that is, a fiduciary duty, and breaches thereof that are contrary to good conscience and which operate to injure another. See United States National Bank v. Bartges, supra.
We find the eloquence of Chief Judge Cardozo particularly apropos to the situation here:
"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the `disintegrating erosion' of particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." Meinhard v. Salmon, supra.

Accordingly, we hold that the plaintiffs proved by clear and convincing evidence[2] the fraud complained of, and that the trial court thus erred in ruling that constructive fraud had not been proved.
However, this cause of action accrued when the wrongful acts were first committed, i. e., August 1963, and thus, unless defendants are equitably estopped from asserting the applicable statute of limitations, whether it be deemed C.R.S.1963, 87-1-15, or C.R.S.1963, 87-1-9, the action would be barred. Hall v. Swan, supra; Morgan v. King, 27 Colo. 539, 63 P. 416 (1900). Whether the doctrine of equitable estoppel is applicable in this case is a question which initially must be decided by the trial court, for it will depend, in part, on whether the statutory violations alleged in plaintiffs' first cause of action are found to exist.
"`Generally speaking . . . equitable estoppel is a rule of justice which in its proper field prevails over all other rules.' The doctrine of equitable estoppel [also] has been invoked to cut off rights or privileges conferred by statute . . . . `A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right.'" Johnson v. Neel, 123 Colo. 377, 229 P.2d 939 (1951). See generally Annot., 45 A.L.R.3d 630.
Here, the record indicates that the directors knew in 1965 that if they missed *883 one more dividend payment the preferred shareholders could take control of the corporation. If, on the retrial, the court finds that dividends were improperly resumed from an illegal fund and were thereafter improperly continued, thus lulling the preferred shareholders into a false sense of security, this fact, coupled with the lack of notice of the corporation's dissolution and lack of knowledge on the part of the preferred shareholders as to the true state of affairs, would justify application of the doctrine of equitable estoppel.
Judgment reversed and cause remanded for further proceedings consonant with the views expressed herein.
KELLY and STERNBERG, JJ., concur.
NOTES
[1] The corporation had settled a claim on which it was primarily liable, and, pursuant to company policy, the corporate officer had indemnified the corporation, part of which indemnification was in the form of a note. Hence, this acceptance of the note did not constitute the making of a "loan" within the meaning of the statute.
[2] Plaintiffs' cause of action having accrued prior to its effective date, § 13-25-127, C.R.S. 1973, is inapplicable here.